Argued April 18, affirmed May 21, 1918.

# CROWN COMPANY *v.* COHN.

(172 Pac. 804.)

**Trusts—Implied Powers of Trustee—Sale of Realty.**

1. Under trust deed by mother to sons and daughters, giving them express power to sell realty for support of mother during her lifetime, then at her death realty to be held in trust for said children, with provision for repayment at that time of advances made for the mother's support, *held*, children trustees had implied power, after death of mother, to sell realty to repay advances made for that purpose and also made for taxes and assessments.

[As to sales and conveyances by trustees, see note in 19 Am. St. Rep. 266.]

**Trusts—Implied Power to Lease.**

2. When a trustee who has possession of lands belonging to the trust estate is charged with the payment of debts, but has no power of sale, he has implied authority to lease upon such terms and conditions as usually prevail in the city or country in which the land is situated.

**Trusts—Sale of Trust Estate—In Solidum.**

3. Where trust estate comprises a single parcel, though consisting of more than one lot, and the best interests of the estate will be subserved by a sale *in solidum*, such disposition will be upheld if fairly conducted.

**Trusts—Deeds—Construction.**

4. Trustor's intention should be determined from the entire language of the conveyance.

**Trusts—Deeds—Construction.**

5. If the words of a trust deed are plain and unambiguous, there is no necessity for judicial interpretation.

**Evidence—Parol Evidence—Latent Ambiguity.**

6. Clause of trust deed, requiring trustees to pay over to trustor's sons and daughters the rents, issues, profits and income from the property, or the proceeds thereof, during the term of their and each of their natural lives when construed with the clause, demanding that in case of the death of either trustee the survivors should pay to the issue, if any, of the deceased trustee such portion of the income of the estate which the parent of such issue, if living, would be entitled to receive, where the income was insufficient to pay the taxes, disclosed a latent ambiguity as to means to be adopted to accomplish the purpose intended, and testimony of those preparing trust deed, showing that the first clause of the will, authorizing trustees to sell, mortgage or lease, was intended by trustor to be incorporated in and read in connection with all other clauses when necessary to the proper execution of the power conferred, was admissible.

**Trusts—Option to Purchase—Powers of Trustees.**

7. Under trust deed, empowering trustees to take possession of, manage, control, lease, mortgage, sell and convey the land constituting the trust estate and invest the proceeds "as to my said trustees shall be deemed advisable," the trustees had power, in consideration of lessee's covenant to place buildings on the land which would enhance the value of trust estate, to give option to purchase.

**Trusts—Lease Beyond Expectancy of Trustee—Validity.**

8. Although trust was limited to life of survivor of trustees and the youngest trustee had an expectancy of 28.18 years, a lease for 30 years would not be void where surviving trustee was authorized to execute all powers conferred by trust deed.

**Judgment—Parties Concluded.**

9. One not a party to a suit for construction of a trust deed at the instance of the trustees is not concluded by decree therein.

**Trusts—Title of Trustees.**

10. Deed, granting to trustees possession of the premises and imposing upon them the performance of active duties relating to the control and management of the estate, contemplated that legal title should vest in trustees until the contingency terminating the trust arrived, in view of Section 7103, L. O. L., providing that it is not necessary to use the term "heirs" or other words of inheritance to convey an estate in fee simple.

**Trusts—Power to Sell—Action of Court.**

11. Where a trust deed expressly or impliedly authorizes trustee to sell realty belonging to trust estate, no action of the court is necessary to effect a proper execution of the power thus conferred.

**Trusts—Sale by Trustees—Right of Purchaser.**

12. Where deed imposes upon trustees duty of selling the land in order to convert the same into money and reinvesting the proceeds for the benefit of the trust estate, the purchaser of the land is under no obligation to see to the application of the purchase money.

From Multnomah: HARRY H. BELT, Judge.

Department 2.

This suit was commenced December 8, 1915, by the Crown Company, a corporation, formerly the Crown Trust Company, against Emma Cohn, Celia Friendly, Laura Rosenthal, Julius C. Friendly and Seymour C. Friendly, individually and as trustees of Clara Friendly, deceased, to rescind their lease of real property, which demise contained an option to purchase the land, and to impress thereon a lien for the im-

provement thereof, on the ground that the defendants were powerless to grant such authority. The cause being at issue was tried and from the evidence received the court made findings of fact and based thereon decreed, October 5, 1916, that by their mother's deed the defendants, as trustees, then took and at all times thereafter held unrestricted power to lease, sell and convey the land; that their deed therefor, which was tendered to the plaintiff, would, if it had been accepted, have conveyed an unencumbered title in fee simple; that if within 60 days therefrom the plaintiff paid $200,000, the stipulated consideration, and $750, the monthly rent of the premises from October 1, 1915, with interest on the latter sums at the rate of eight per cent per annum as agreed upon, the defendants should execute to it a deed containing the covenants specified in the demise, and that the plaintiff need not look to the application of the purchase money; that if such payments were not made within the time limited, then and in that event the defendants were to recover possession of the real property and the deferred installments of rent and interest thereon at the rate indicated, and thereupon the plaintiff should be strictly barred and foreclosed of all right, title, claim, interest and estate in and to the land and the lease thereof; and that the defendants should have leave to apply, from time to time, at the foot of the decree, for such other and further orders as were or might be necessary in the premises. From this decree the plaintiff appeals.                     AFFIRMED.

For appellant there was a brief over the name of *Messrs. Fulton & Bowerman,* with an oral argument by *Mr. Jay Bowerman.*

. For respondents there was a brief over the name of *Messrs. Bronaugh & Bronaugh,* with oral arguments by *Mr. Earl C. Bronaugh* and *Mr. Jerry E. Bronaugh.*

MOORE, J.—The evidence shows that on the day first hereinafter stated, the grantor was the owner in fee of the real property described in a deed, which, omitting her signature and seal, the names of the witnesses to the conveyance, and the usual acknowledgment thereof, reads:

"This indenture made and entered into this 10th day of February, 1909, by and between Clara Friendly (widow) of Portland, Multnomah County, Oregon, party of the first part, and Emma Cohn, Laura Rosenthal, Celia Friendly, Julius C. Friendly, and Seymour C. Friendly, children of the said Clara Friendly, parties of the second part, as trustees,

"Witnesseth: That the said party of the first part for and in consideration of the sum of Ten Dollars to her in hand paid, the receipt whereof is hereby acknowledged, does hereby bargain, sell, assign, transfer and convey unto the said Emma Cohn, Laura Rosenthal, Celia Friendly, Julius C. Friendly and Seymour C. Friendly, as Trustees, the parties of the second part herein, all the following bounded and described real property, to wit:

"Lots one (1) and eight (8) in Block two hundred and fifty-four (254) in the city of Portland, Multnomah County, state of Oregon,

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging.

"To have and to hold the same unto the said parties of the second part in trust for the following uses, to wit:—

"First:—To take possession of said property, manage and control the same, lease, mortgage, sell or convey the same, and to re-invest the proceeds thereof in such other property or securities as to my said trus-

tees shall be deemed advisable, and to pay over to me such sum or amounts of money as may be necessary for my support and maintenance during the term of my natural life, and for the payment of all my just debts, and to borrow money for my support, should the same be necessary, and to hold and pledge said property as security for the same.

"Second:—Upon my demise, after deducting from said trust estate any sum or sums of money which may have been borrowed or advanced thereon by my said trustees or any of them with six per cent interest thereon, my said trustees shall hold all the rest and residue of said property or the proceeds thereof in trust for the use and benefit of my said five children, Emma Cohn, Laura Rosenthal, Celia Friendly, Julius C. Friendly and Seymour C. Friendly, share and share alike, during the term of their and each of their natural lives, and shall pay over to my said children, in manner aforesaid the rents, issues, profits and income from said property, or the proceeds thereof during the term of their and each of their natural lives.

"Third:—Upon the death of any of my said children, without leaving issue then living the share or interest belonging to said deceased child, under this trust, shall immediately vest in and be enjoyed by all my remaining children, then living, share and share alike.

"Fourth:—Should any of my said five children above named, die leaving issue, then my said trustees shall pay over to said issue such part or portion of the income of my said estate hereby conveyed in trust, which the parent of such issue if living, would be entitled to receive under this trust, during the life or lives of such issue, or until the termination of the trust estate as hereinafter limited.

"Fifth:—Upon the death of the last surviving child of my said five children above mentioned, the trust estate hereby created, shall terminate, and all property, rights, interests and effects of said estate, shall immediately vest in the issue of any and all of my said five children, if any, then living, and to their heirs and

assigns forever, in fee simple absolute, to be held and enjoyed by them per stirpes and not per capita.

"Sixth:—Should there be no living issue of my said five children, or of any of them, upon the death of the last surviving child of my said five children, then the estate, rights, interests and effects of the said trust estate hereby created and the whole thereof, shall immediately vest in the heirs at law of such last surviving child of my said five children, in fee simple absolute, and this trust estate shall terminate.

"Seventh:—The trustees hereby appointed under this indenture or a majority of them shall have power to do and perform any and all acts and things necessary and proper in the management and performance of their said trust, and upon the death of any of said trustees, all the powers hereby created, shall immediately vest in the surviving trustees, and said trust shall be carried on and be executed by the said surviving trustees, or a majority of them, in the same manner and to the same extent as is herein provided for all of said trustees above named, until the death of the last surviving trustee, when the trust estate hereby created shall terminate as above provided.

"In witness whereof I have hereunto set my hand and seal the day and year above written."

Mrs. Friendly died January 22, 1910, leaving surviving her sons and daughters, the defendants herein. No other disposition of the real property so described having been made, Emma Cohn on May 23, 1911, commenced a suit in the Circuit Court of the State of Oregon for Multnomah County against her brothers and sisters to obtain a construction of such deed, setting forth in the complaint a copy thereof and alleging that her mother intended to invest the grantees therein named with full power to lease, mortgage, sell and convey the premises, as well after the grantor's death as prior thereto, and to invest and reinvest the proceeds arising therefrom in other property or securities; that

the real property has a frontage of 50 feet at each end thereof on Tenth and Eleventh streets respectively, and 200 feet thereof borders on Stark Street; that the buildings on those lots were old and of little value, for which reason they produced but small income; that the lots are of great value and the taxes annually levied thereon exceed the income derived from the premises; that the trustees have no funds with which to improve the premises, and if the real property remained in its then condition, the taxes levied and the municipal assessments imposed thereon would soon consume the entire trust estate, which property was in danger of being lost; that the lots could readily be sold for a large price and the proceeds derived therefrom be invested in other property or securities to the great advantage of the several beneficiaries; that as a trustee and beneficiary, the plaintiff has endeavored to cause a part of the land to be sold but had been unable to procure a purchaser, because of the asserted uncertainty of the terms of the trust:

"That neither of the children of said Clara Friendly has any living issue and there is no person or persons beneficially interested in said estate, except the plaintiff and the defendants herein."

The prayer of the bill was for a construction of the grantor's intent as evidenced by the trust deed; that it might be decreed that the trustees were vested with full and complete power to sell the lots and every part thereof, but if any doubt on that subject existed, the court by virtue of its plenary authority to administer trust estates so as to prevent waste and destruction thereof, would empower the trustees to sell and convey the real property, or such part thereof as might be deemed advisable in order to conserve the estate

for the advantage of the beneficiaries, according to the intent and purpose of the trustor, and for such other relief as to the court might seem equitable. Laura Rosenthal, a defendant herein, separately answering the complaint in that suit, admitted many of the averments thereof, but as to other statements of fact contained therein, she alleged that she did not have sufficient information or knowledge to form a belief as to the truth of such matters, and for that reason she denied them. The defendants herein, Julius C., Seymour C. and Celia Friendly, jointly answering in that suit, admitted all the averments of the complaint and also joined in the prayer therein contained. Based on the pleadings in that suit the cause was tried and from the evidence received the court made findings of fact and of law and on June 21, 1911, rendered a decree to the effect that the trustees were authorized by their mother's deed to lease, mortgage, sell and convey the lots and to grant to the purchaser thereof a full, complete and absolute title in fee simple, and that they also were empowered to reinvest the proceeds arising from a sale of the premises in other property or securities.

Julius C. Friendly, a bachelor, Emma Cohn, a widow, Celia Friendly, a spinster, Laura Rosenthal and Jacob Rosenthal, her husband, and Seymour C. Friendly and Maud Friendly, his wife, and also the defendants as trustees of Clara Friendly, deceased, on January 2, 1912, leased these lots for a term of 30 years to the plaintiff, as the Crown Trust Company, which stipulated to pay the rent reserved, to liquidate the taxes thereafter annually to be levied, and the assessments which might be imposed upon the premises, and within five years to erect at its own expense upon the real property a building of the value of not less than

$75,000, and to keep the structure insured to the extent of three fourths of its worth. The lease also granted to the plaintiff at any time within the first five years of the demise, the sole and exclusive right to purchase the real property for $200,000, and at each subsequent year an additional sum of $10,000 more than the preceding year, until the tenth year when $250,000 was the consideration to be paid and the limit of the option, upon the exercise of which, within the times specified, the defendants, as trustees, and Julius C. Friendly, individually, stipulated to execute to the plaintiff a deed of the lots, containing a covenant to warrant and defend the title to the premises against the lawful claims and demands of all persons whomsoever, claiming the same or any part thereof under or by virtue of any provision of the deed of Clara Friendly to them.

.The trustees on April 30, 1912, jointly appeared under the title of the original suit, so instituted by Emma Cohn, and by their petition represented that pursuant to the decree construing the terms of the deed, they had leased the real property as hereinbefore stated; that the yearly income derived from the land did not exceed $1,620, while the taxes annually levied thereon were more than $2,000, besides the cost of keeping up the repairs, paying insurance and incurring the burdens of municipal assessments; that in order to effect an advantageous lease of the real property they were obliged to grant an option to purchase the lots, at a price greater than the then market value. A copy of the lease was made a part of the petition, the prayer of which was that the act of the trustees in such particular be ratified and confirmed, and an order to that effect be entered at the foot of the former decree in that suit, providing that when the option was exercised the trustees be authorized to

execute to the purchaser a deed of the premises, and
that the administration of the trust estate be con-
tinued, subject to the further order of the court.    In
accordance with the prayer of the petition, findings of
fact were made as therein stated and a decree was ren-
dered ratifying and confirming the action of the
trustees in leasing the land and in granting the option
to purchase it; directing that the further administra-
tion of the trust be continued subject to the order of
the court; that upon an exercise of the option to pur-
chase the real property, the trustees should report
such fact to that tribunal which would supervise the
further administration of the estate and direct what
disposition should be made of the fund arising from
the sale of the premises; and that the trustees have
leave, from time to time, to apply to the court for fur-
ther instructions relating to the discharge of their
duties.

The plaintiff, relying upon the covenants contained
in the lease, erected upon the lots a building at a cost
of $87,470.54, besides incurring other expenses, and on
September 29, 1915, notified the defendants of its elec-
tion to purchase the real property at the stipulated
price of $200,000.    The trustees thereupon subscribed,
caused to be sealed, witnessed and acknowledged a
deed of the lots that was tendered to the plaintiff, but
it refused to accept the instrument asserting that after
their mother's death the trustees were powerless to
sell and convey the premises.    The plaintiff also re-
fused to pay the monthly rental of $750 which matured
October 1, 1915, and thereupon tendered to the de-
fendants a reassignment of the lease and demanded a
repayment of the money which it had expended,
amounting to $104,527.28.    The defendants refusing to

comply therewith, this suit was instituted and resulted as hereinbefore stated.

1, 2. An examination of the first clause of Mrs. Friendly's deed will show that she expressly empowered her sons and daughters, as trustees, to take possession of, lease, sell and convey the real property so described, and to invest the proceeds in other property or securities, to enable them to advance to her such sums of money as were necessary for her support and maintenance and to pay her just debts. It is insisted by plaintiff's counsel that by the second clause of the deed the authority conferred by the first paragraph thereof, to sell and convey the lots, terminated at the grantor's death, when all the property or the proceeds thereof then remaining was to be held in trust for the beneficiaries named in the conveyance. It will be remembered that by the first clause the authority to take possession of and lease the land was as expressly granted as was the power to sell and convey the lots. In seeking to ascertain Mrs. Friendly's intention, as evidenced by the conveyance, it cannot reasonably be supposed that it was her purpose, if no sale of the premises were made during her lifetime, as was the case herein, the trustees were required or expected to let the real property remain tenantless and unproductive so that no benefits therefrom could have been obtained, though the annual taxes to be levied thereon were inevitable and the municipal assessments for public improvements probable. To impute such a design to Mrs. Friendly would be challenging the intelligence of a woman who had acquired and held for many years real property of the value of these lots. It must be admitted, however, that when a trustee who has possession of lands belonging to the trust estate, is charged with the payment of

debts, but has no power of sale, he has implied authority to lease the real property upon such terms and conditions as usually prevail in the city or country in which the land is situated: 2 Beach, Trusts and Trustees, § 446; 2 Perry, Trusts and Trustees (6 ed.), § 528. If, after Mrs. Friendly's death, the trust deed prohibited a sale of the land, then any sums of money that had been borrowed or advanced by the trustees or either of them to secure her support and maintenance could not be deducted from the trust estate, in case a sale of the real property was not made during the trustor's life. But as by the second clause of the deed authority to make such deductions is expressly granted to take effect after her death, the power thereafter to sell and convey the land is necessarily implied: *Brown* v. *Brown,* 7 Or. 285. In that case it was ruled that where a testator devised his real estate to trustees to pay his debts and to hold the residue in trust for the benefit of an incorporated town, the trustees who were also the executors of the will, had implied power to sell sufficient land to pay the debts where the will contained no express power for that purpose. A textwriter in discussing this legal principle remarks:

"No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee. Thus an assignment in trust to pay debts will necessarily imply a power of sale, though none is given in words": 2 Perry, Trusts and Trustees (6 ed.), § 766. To the same effect, see, also, 39 Cyc. 351; 1 Devlin, Real Estate, 3 ed., § 432, note 7.

The testimony does not show what sums of money, if any, were advanced or borrowed by the defendants, or either of them, and employed in supporting their

mother.   There were received in evidence, however, canceled checks which had been issued by the defendant, Julius C. Friendly, in payment of taxes levied, and municipal assessments imposed upon the lots hereinbefore described, and tax receipts showing that between February 25, 1907, and March 11, 1912, he had paid out for such purposes the sum of $11,337.12.   As a witness he testified that the annual income derived from the real property in question would not meet the payment of more than one half of such exactions.

The power of the trustees to sell the land in order to meet the payment of the money so advanced is clearly implied, and such authority could legally be exercised after the death of Mrs. Friendly.

3. The verified complaint of the defendant Emma Cohn, in her suit to obtain a judicial construction of the trust deed, alleged in effect that as a trustee and a beneficiary under that conveyance she had endeavored to cause a part of the real property to be sold but had been unable to secure a purchaser thereof.   The land consists of two contiguous lots in the City of Portland, Oregon, and while the general rule is that no more of a trust estate should be sold than is necessary to meet the payment of debts against it, the application of this legal principle does not require that small parts of an entire tract shall be segregated and sold as exigencies require, for by that method the value of the entire tract would probably be much diminished.   When, as in this instance, the real property comprises a single parcel, though consisting of more than one lot and the best interests of a trust estate will be subserved by a sale thereof *in solidum,* such disposition of the land will be upheld if, as in the case at bar it has been fairly conducted.

4, 5. In construing the terms of a trust deed, the purpose of a court should be to ascertain the trustor's intention which design is to be determined from an inspection of the entire language of the conveyance. If the words thus employed are plain and unambiguous there is no necessity for judicial interpretation.

"But where the instrument is indefinite or inconsistent, the court can look at the declarations of the donor and consider the surrounding circumstances in determining just what the intention of the donor was": 39 Cyc. 197.

6. The second clause of the trust deed requires the trustees to pay over to the trustor's sons and daughters "the rents, issues, profits and income from said property, or the proceeds thereof during the term of their and each of their natural lives." The fourth clause demands that in case of the death of either trustee, the survivors shall pay to the issue, if any, of the deceased trustee "such part or portion of the income of my said estate hereby conveyed in trust, which the parent of such issue if living, would be entitled to receive under this trust." A compliance with these provisions imposed upon the defendants the discharge of active duties to perform, which power was impliedly conferred, whereby they were authorized to adopt such reasonable means as were essential to carry out the intention of the trustor, as evidenced by the language of her deed when considered in its entirety. What these methods were to be are left somewhat in doubt by the second clause of the conveyance, which provides that upon the death of Mrs. Friendly, the trustees "shall hold all the rest and residue of said property or the proceeds thereof in trust for the use and benefit of my said five children." If the latter clause was designed to prohibit a sale of the land after the trustor's death,

then it was impossible for the defendants to discharge the duties enjoined upon them in respect to any disposal of the proceeds of the property, for without a sale thereof no income therefrom was possible, since the rents would not discharge more than one half of the taxes and other expenses. Construing together the clauses referred to a latent ambiguity is manifest, as to the means to be adopted to accomplish the purpose clearly intended. In view of such uncertainty the testimony of the several defendants, and that of the attorney who at Mrs. Friendly's request prepared the trust deed, was properly received, showing that the provisions of the first clause of the conveyance were intended by the trustor to be incorporated in, and read in connection with all the other clauses when necessary to a proper execution of the power conferred.

We conclude, therefore, that all the powers expressly conferred by the first clause of the trust deed are applicable to all the other paragraphs thereof when essential to give validity thereto and to carry out Mrs. Friendly's intention, thereby authorizing the defendants, as well after as prior to her death, to do and perform all the acts and duties specified in the first clause of the deed, except such as relate to the care and support of the trustor.

7. It is contended by plaintiff's counsel that the option attempted to be granted to their client, to purchase the property, was not an exercise of the power conferred upon the defendants to sell and convey the premises, for such authority does not include power to grant an option to purchase the real property. The strongest case cited to support the principle so insisted upon will be examined. Thus in *Hickok* v. *Still,* 168 Pa. St. 155 (31 Atl. 1100, 47 Am. St. Rep. 880), it was ruled that a trustee was not permitted to deprive him-

self of a power of sale conferred for the benefit of the trust; nor so to fetter its exercise by himself or his successor as to defeat the purposes of the trust. In deciding that case it is said:

"The power conferred is an authority to sell during the life of the husband, and a peremptory direction to sell immediately after his death. As the husband of the testatrix was the executor, and during his life the sole possessor of the power, he might have made a sale deferring the time of settlement. This, however, he did not do. He did not sell the property, but entered into an agreement with the plaintiff, which gave her the privilege of buying at any time within three and a half years. By this agreement she was entirely free; she was not bound to purchase. But he, and in the event of his death his successor in the trust, was bound to sell to no one else during the period fixed. The vice of the agreement is that it bound the trust estate, no matter what the detriment to it might be, without giving it any corresponding advantage. This was not a use of the power, but a surrender of it for the time. It suspended the exercise of the discretion which had been given the executor, and defeated the direction in the will for an immediate sale upon his death."

In a note to that case it is said:

"A trustee, under a deed of trust, has no power to impose new terms or conditions, or to alter, vary, or dispense with those contained in the deed."

The trust deed herein did not contain, as the provisions of the will in the last case, a command to dispose of the real property in any designated time. By the express terms of their mother's conveyance the defendants were empowered to take possession of, manage, control, lease, mortgage, sell and convey the land and invest the proceeds thereof "as to my said trustees shall be deemed advisable." Pursuant to this grant of

88 Or.—42

authority the lease, which the defendants executed, required the plaintiff, at its own expense, to erect upon the lots within a specified time a building of a particular value, annually to liquidate the taxes and such assessments as might be imposed upon the premises, and monthly to pay the rent reserved, unless prior to the termination of the devise the option to purchase the land was exercised. The plaintiff was not compelled to purchase the real property but was obliged to erect thereon a building which improvement enhanced the value of the trust estate, and made the rents thereafter to be received a decided benefit instead of a substantial burden as it had theretofore been. The covenant to put up the building was a sufficient consideration for the option, which right of election was not void for any lack of authority on the part of the defendants to grant it.

8. It is maintained by plaintiff's counsel that the trust being limited to the life of the survivor of the trustees, the defendants could not lease the lots for a term to expire beyond that period of restriction. The case relied upon as supporting this assertion is that of *Bergengren* v. *Aldrich,* 139 Mass. 259 (29 N. E. 667), where it was decided that a will devising land to a trustee for the life of a third person, with power to sell, a lease executed by the trustee for a certain term, with an agreement to renew at the end of the term for another period, could not be renewed after the death of the person during whose life the trustee was to hold, since such agreement in the lease did not bind the remainderman. The lease herein was executed January 2, 1912, when the age of the youngest defendant was 40 years. Such person then had a life expectancy of 28.18 years: 20 Am. & Eng. Ency. Law (2 ed.), 885. Though the demise was for a term of 30 years, or 1.82

years in excess of such average anticipation, the probability of the death of the youngest defendant within the limit of the term is not so certain as to render the lease void on account of the prescribed time, when it is remembered that the last surviving trustee was authorized to execute all the powers conferred by the terms of the trust deed.

9. It is argued by plaintiff's counsel that the construction of a trust deed by a court at the instance of trustees who themselves are the beneficiaries for life is not binding upon possible remaindermen when no person of that class is *in esse* at the institution or determination of the suit. The legal principle thus insisted upon seems to be well sustained by the decisions of courts of last resort, as is illustrated by the notes to the following cases: *Kent* v. *Church of St. Michael,* 136 N. Y. 10 (32 N. E. 704, 32 Am. St. Rep. 693, 18 L. R. A. 331); *Hale* v. *Hale,* 146 Ill. 227 (33 N. E. 858, 20 L. R. A. 247); *Gavin* v. *Curtin,* 171 Ill. 640 (49 N. E. 523, 40 L. R. A. 776); *Downey* v. *Seib,* 185 N. Y. 427 (78 N. E. 66, 113 Am. St. Rep. 926, 8 L. R. A. (N. S.) 49); *Boal* v. *Wood,* 70 W. Va. 383 (73 S. E. 978, 42 L. R. A. (N. S.) 439). But whatever the rule may be in such a case, it can have no application to the plaintiff herein, which was not a party to the suit instituted by Emma Cohn against her brothers and sisters to secure a construction of the trust deed, and for that reason the Crown Company is not concluded by the decree rendered therein.

10. It becomes important to determine the nature of the title which the defendants secured to the land by the execution of their mother's deed. In Oregon the term "heirs" or other words of inheritance are not necessary to create or convey an estate in fee simple: Section 7103, L. O. L. It is unnecessary to advert to

the statute of uses which has never been enacted in this state. An examination of the deed hereinbefore set forth will show that the conveyance is an exception to the operation of that statute, granting to the trustees possession of the premises, and imposing upon them the performance of active duties relating to the control and management of the estate, thereby requiring that the legal title should vest in them, until the contingency referred to in the grant arises, in order that the trust might properly be administered: 2 Beach, Trusts and Trustees, § 395; 1 Perry, Trusts and Trustees (6 ed.), § 307. At Section 373 of the latter volume the author remarks:

"So a power given to executors to rent, lease, repair, and insure implies a legal title in them."

11. Where a trust deed expressly or impliedly authorizes a trustee to sell real property belonging to the trust estate, no action of the court is necessary to effectuate a proper execution of the power thus conferred: 39 Cyc. 346, 348. The legal title to the lots thus being in the defendants they could, without any order of court authorizing it, by a proper deed transfer all the estate, right, title and interest which their mother had or held in or to the land, free from any claim thereon or thereto on the part of her unborn grandchildren, for whom, if any should subsequently come into being, the defendants will hold the principal of the fund derived from the sale of the real property in trust, or if no grandchildren be born then in trust for the heirs of the last survivor, the trustees appropriating to themselves, however, the rents, issues, profits and income from such land or the income therefrom.

12. The trust deed imposes upon the defendants the duty of selling the land in order to convert the same into money and reinvesting the proceeds for the benefit of the trust estate. In such case the purchaser of the land, as was properly held by the trial court, is under no obligation to see to the application of the purchase money: 2 Beach, Trusts and Trustees, § 718.

It follows from these considerations that the decree should be affirmed, and it is so ordered.

AFFIRMED.

McBRIDE, C. J., HARRIS and BEAN, JJ., concur.