Marie Anna Eisenmenger, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 99914.   Promulgated May 14, 1941.

*Edgar G. Vaughn, Esq.*, for the petitioner.
*Lucien W. Shaw, Esq.*, for the respondent.

## OPINION.

Mellott: This proceeding involves a deficiency in income tax in the amount of $3,458.47, of which $1,847.48 is for the calendar year 1936 and $1,610.99 for the calendar year 1937.

There is no substantial dispute between the parties as to the facts. They were all admitted in the pleadings, orally stipulated at the hearing, or contained in documents introduced in evidence without objection or subject only to an objection as to materiality.

The major issue is whether dividends, received during the taxable years by a trust in the form of deferred debenture notes, constituted income currently distributable by the trust to petitioner. There is no dispute as to the treatment to be accorded the cash dividends received. The only other issue is whether any deductions for taxes and accounting fees may be allowed in computing petitioner's distributable share of the trust income.

The facts are found to be as stipulated or admitted. For present purposes they may be summarized as follows:

Petitioner, a resident of St. Paul, Minnesota, duly filed her income tax returns for the years in question with the collector of internal revenue for the district of Minnesota and paid the taxes shown to be due. Her returns were made on the cash basis.

On December 31, 1931, Charles W. Eisenmenger, husband of petitioner, created a trust known as the Charles W. Eisenmenger Trust

No. 1 (hereinafter referred to as the trust) the corpus of which consisted of 200 shares, or 40 percent, of the common stock of the Chamar Investment Co., a personal holding company. The settlor, petitioner, and Ottilie Eisenmenger were named as trustees. During the years 1936 and 1937 and thereafter petitioner was a beneficiary of the said trust. The trust instrument provided in part as follows:

## I.

The trustees shall pay to Marie Anna Eisenmenger, the wife of the grantor, for and during the term of her natural life, annually or as received, the net cash income received by them from the said shares of stock.

## II.

Upon the death of the said Marie Anna Eisenmenger, the trustees shall pay and distribute to the four sisters of the grantor, * * * annually or as received in equal proportions, share and share alike, the net annual income received by them from the said Two Hundred (200) shares of stock. Each of said sisters shall be entitled to her share of said income for and during the term of her natural life.

## III.

Upon the death of any of said sisters, without leaving issue, the trustees shall pay and deliver to the remaining sisters annually or as received in equal proportions, share and share alike, the net annual income received by said trustees from said shares of stock. Each of the said remaining sisters shall be entitled thereto for and during the term of her natural life.

## IV.

Upon the death of any of said sisters leaving issue, then the net cash income apportionable to such sister, if living, shall be held by the trustees in trust, for the absolute sole use and benefit of her children, in equal proportions, each child share and share alike in the income apportionable to their mother, if living. * * *

Upon the death of the remaining sisters, their interest in said net cash income received by the trustees from said shares of stock shall be held by the trustees in trust for the absolute, sole use and benefit of the said children in equal proportions, share and share alike. * * *

## V.

As soon as one of said children shall attain the age of thirty-five (35) years, then and in such event, he or she shall become entitled to and vested with an interest in One Hundred and Fifty (150), shares of the shares of stock forming corpus of the trust, in the same proportion as his or her share shall be in the income or [of] the trust, as hereinbefore set forth; and the trustees shall assign, transfer, and pay over to such child or children, his or her, or their proportion, of the previously accrued income and in and to the One Hundred and Fifty (150) shares of stock forming a part of the corpus of the trust. * * *

## VI.

When One Hundred and Fifty (150) shares of the shares of stock forming the corpus of the trust shall have been distributed to the children of my de-

ceased sister or sisters, then the trustees shall proceed to terminate the trust by assigning and transferring the remaining Fifty (50) shares in the following manner * * *.

\* \* \* \* \* \* \*

## XII.

The term "net income" as herein used, shall include only the ordinary revenues less expenses incident to the trust, but shall not include any accretions or increment to the principal of the trust, whether such increment or accretion is realized by way of stock dividend or the sale or other disposition of the said shares of stock.

On December 28, 1936, a resolution was adopted by the board of directors of the Chamar Investment Co. in which it was recited that the tentative financial statement of the corporation disclosed earnings for 1936 in excess of $36,000; that it was the apparent requirement of Congress that such earnings be distributed forthwith or be made the subject of a penalizing tax; and that if consideration is given to the value of the investments of the corporation it would appear inexpedient and unwise to pay a cash dividend at that time. It was resolved that a dividend of $40,000 "be and is hereby declared, to be payable to the stockholders of this corporation forthwith and as of record December 28, 1936." It was further resolved that 10 percent of such dividend, or $4,000, be paid in cash and the balance, or $36,000, be paid in 5 percent subordinated debenture notes, to be issued by the Chamar Investment Co. payable on or before December 31, 1946.

The trustees received, as dividends on the shares of stock held in trust, $1,600 in cash and a "5 per cent Subordinated Debenture Note" in the amount of $14,400, dated December 28, 1936, the principal being payable on or before December 31, 1946. The note provides that: (1) It is one of a total issue of $36,000 of notes bearing the same date; (2) no transfer of the notes shall be valid unless made by the registered owner thereof and registered on the books of the company; (3) the note may be retired at par and accrued interest on any interest date; (4) the note is subject and subordinated as to principal to the claims of all other creditors, present and future, of the corporation; (5) in the event of liquidation the note and interest thereon shall be paid in full before any payment is made to the stockholders; (6) no action in court for interest can be brought unless the interest shall have been in default for three years and no suit on the note (except for interest) can be brought unless joined in by the holders of 75 percent of the notes of the issue; (7) no dividends are to be paid by the corporation unless and until the interest due on the notes shall have been paid in full; and (8) the holder of the note ex-

pressly agrees to be bound by each and every term and condition thereof. The note at the time of its receipt by the trustees and at all times until the end of the calendar year 1936 had a presently stipulated fair market value of $14,400.

The trustees retained the note and on December 31, 1936, deposited the cash to the account of the trustee in a local bank. No distribution of any portion of the cash or note was made to the beneficiary of the trust in 1936. The trustees filed their fiduciary income tax return for the year 1936 in March of 1937 and reported the receipt of dividends in the amount of $16,000. No credit was taken in the return for distributions to the beneficiary of the trust and the trustees, in 1937, paid an income tax of $1,290 upon the reported basis.

On December 29, 1937, a resolution was adopted by the board of directors of the Chamar Investment Co. similar to the resolution of December 28, 1936, referred to above. Under this resolution a dividend of $35,000 payable to the stockholders of record as of December 29, 1937, was declared, of which 15 percent, or $5,250, was to be paid in cash and the remaining 85 percent, or $29,750, was to be paid in 4 percent subordinated debenture notes of the Chamar Investment Co. The trustees received, as dividends on the shares of stock held in trust, $2,100 in cash and a "4 percent Subordinated Debenture Note" in the amount of $11,900, the principal being payable on or before December 31, 1946. The provisions of said note, except as to the amount, date, and interest rate, are identical to the provisions of the note dated December 28, 1936, referred to above. Said note had a presently stipulated fair market value at the time of its receipt by the trustees, and at all times until the end of the calendar year 1937, of $11,900.

The trustees retained the note and on December 29, 1937, deposited the cash to the credit of the trustees in a local bank, together with an item of $720, making a total deposit of $2,820. The item of $720 represented interest on the 5 percent subordinated debenture note issued to the trustees as a dividend in 1936. No distribution of any portion of the $2,100 cash dividend, the 4 percent subordinated debenture note received as the 1937 dividend, or the interest on the 1936 dividend note was made to the beneficiary of the trust in 1937. The trustees prepared and filed their fiduciary income tax return for the year 1937 reporting the receipt of dividends from a domestic corporation in the amount of $14,000 and $720 interest. An income tax of $1,247.75 on this amount (less a fee of $45 for professional services) was paid by the trustees in 1938.

During the year 1936 the trust made no disbursements of any kind with respect to expenses or otherwise. Its books were kept on the cash basis.

During the year 1937 the only disbursements made by the trust consisted of a payment to the collector of internal revenue for income tax upon the 1936 income in the amount of $1,290 and a payment of $45 to an accounting firm for accounting service and making out returns.

The tax shown to be due by the return of the trust for 1937 ($1,247.75) was paid to the proper collector during the early part of 1938. Other disbursements made by the trust during 1938 were $759.65 for Minnesota state income taxes for 1937 and $45.50 for accounting fees.

Petitioner, in her income tax returns for the years 1936 and 1937, did not include in her gross income any amount on account of, or in connection with the trust.

Respondent in the deficiency notice dated June 7, 1939, included as additional income to petitioner for the year 1936 the sum of $16,000 and for the year 1937 the sum of $14,675. These amounts included the dividends declared in cash and notes by the investment company for the years 1936 and 1937, and the interest of $720 received during the latter year. The 1937 income of $14,720 was reduced by the amount of $45 expended for accounting fees during that year. In the deficiency notice he justifies his action in the following language:

It is held that the notes and cash received by the Charles W. Eisenmenger Trust #1 during the years 1936 and 1937 as dividends from the Chamar Investment Company were income distributable to you as the beneficiary. Accordingly, there is added to your income for the calendar year 1936 the amount of $16,000.00, and for the calendar year 1937 the amount of $14,675.00

Petitioner contends that the debenture notes received by the trustees as dividends in each of the taxable years should not be taken into consideration in computing the net income of the trust distributable to her under section 162 (b) of the Revenue Act of 1936.[1] The parties also disagree as to the amount of the disbursements which may be deducted in computing the distributable net income of the trust. These issues will be discussed in the order stated.

In support of her first contention petitioner relies exclusively upon the language of paragraph 1 of the trust, stating that the trustees

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

shall pay her, for and during her lifetime, the "net cash income" received by them from the shares of stock. She takes the position that the debenture notes were not *cash* income. Respondent on the other hand urges that a study of the entire trust agreement indicates that the expression "net cash income" and "net annual income" are used interchangeably; that "net cash income" should be given the same meaning as "net annual ·income", and that petitioner, as the beneficiary of the net annual income of the trust during her lifetime, should have included the value of the debenture notes in computing her distributable share of the trust income.

The general rule with reference to the construction of trust instruments has frequently been stated substantially as follows:

> The instrument should be construed as a whole so as to ascertain the general intention of the creator of the trust. Where there is manifest a general intent, construction should be such as to effectuate such intent, though in so doing some particular or subordinate intent may be defeated, or the literal import of the words be departed from. [*Mills* v. *Embrey*, 166 Va. 383; 186 S. E. 47.]

See also *Buck* v. *Huntley*, 151 Minn. 446; 187 N. W. 411; *Boucicault* v. *Leubuscher*, 207 N.Y.S. 1, 2; *Dunn* v. *Dunn*, 219 Ia. 349; 258 N. W. 695; *Crise* v. *Smith*, 150 Md. 322; 133 Atl. 110, 112; *Dittemore* v. *Dickey*, 249 Mass. 95; 144 N. E. 57, 60; *Clark* v. *Hearne*, 263 Mass. 114; 160 N. E. 309; *Knowlton* v. *Atkins*, 134 N. Y. 313; 31 N. E. 914, 916; *Judge* v. *Pyle*, 224 Pa. 479; 73 Atl. 919, 920; *Crown Co.* v. *Cohn*, 88 Ore. 642; 172 Pac. 804, 808; *Miller* v. *Douglass*, 192 Wis. 486; 213 N. W. 320, 322.

With this general rule in mind, we have examined the trust agreement to determine whether the expression "net cash income" used in paragraph I was intended by the grantor to limit petitioner to strictly cash income, as she urges, or whether his intention was that it should include the debenture notes received by the trustees during the taxable years, as respondent urges.

It will be noted that the only asset of the trust was stock of a holding company. It is entirely possible and we think quite probable that the grantor anticipated that the income of the trust would consist only of cash dividends, stock dividends, or profit from the sale of the shares. These seem to be the only classes of income in the grantor's mind. If, therefore, he anticipated that the chief income would be cash—a sound view to take considering the trust corpus—it would be immaterial to him which expression was used, inasmuch as the "net cash income" would be the "net annual income", with the exception of such profits as might be received from the sale of the stock or stock dividends received as an "increment or accretion" under paragraph XII. Then too, it must be kept in mind that the principal beneficiary under the trust—at least the one first

mentioned, petitioner herein—was the wife of the settlor. In paragraph I she is given the "net cash income." Under paragraph II the settlor's four sisters are given, after the death of petitioner, the "net annual income" during the term of the natural life of each, while under paragraph IV, upon the death of any of the sisters leaving issue "the net cash income apportionable to such sister, if living" is to be held in trust for the children of such sister. If the strict construction advocated by petitioner be applied to the expression "net cash income", petitioner's distributable share of the annual income during her lifetime will be less than that given to the grantor's sisters after her death, and the children of any deceased sister will receive a smaller share than their parent had received prior to her decease. Such a construction would not in our opinion give effect to the intention of the grantor. His use of the expression "net cash income apportionable to such sister" in paragraph IV, when, under the provisions of paragraphs II and III the "net annual income" was to be divided among the sisters, indicates that he believed that the "net cash income" would be the same as the "net annual income", and that he intended that the "net annual income" should be distributed to petitioner even though he designated her distributable share as the "net cash income" of the trust in paragraph I.

The soundness of his conclusion is apparent when the result of limiting petitioner's distributable share of the trust income to strictly "cash" income is considered. The debenture notes received as dividends in each of the taxable years are "noncash" income. If they are not distributed to petitioner during her lifetime under the provisions of paragraph I they can not be distributed under the provisions of paragraphs II, III, and IV, as these paragraphs cover only income received by the trustees after her death. What, then, would the trustees do with this income? The petitioner argues that: (1) They would distribute it to the children of a deceased sister of the grantor under the provisions of paragraph V; or (2) if it is not distributable as accrued income to them, the trustees could treat it as an "accretion or increment" to the corpus of the trust estate under paragraph XII.

Paragraph V provides that upon the children of the sisters reaching the age of 35, they shall become vested with an interest in 150 (out of 200) shares of stock constituting the corpus, in the same proportion as their previous shares in the income, and that "the trustees shall assign, transfer, and pay over to such child or children, his or her, or their, proportion, of the previously accrued income. * * *"
We are unable to agree with petitioner that "previously accrued income" in paragraph V was intended to cover noncash income, such as the debenture notes, accumulated during the lifetime of petitioner. The only provision in the trust instrument for accruing income for these children is contained in paragraph IV. This paragraph pro-

vides that, upon the death of any of the grantor's sisters leaving issue, the net cash income apportionable to such deceased sister shall be held by the trustee in trust for her children; that as much of this income as may be necessary shall be used by the trustees for the maintenance and education of such children; and that the surplus of the income be invested for their benefit. In our opinion the "previously accrued income" mentioned in paragraph v was intended to refer only to the income which a child or children of a deceased parent was entitled to receive under paragraph iv and which had not been expended by the trustees for the maintenance and education of such child or children.

Paragraph xii provides that "The term 'net income' as herein used, shall include only the ordinary revenues less expenses incident to the trust, but shall not include any accretions or increment to the principal of the trust, whether such increment or accretion is realized by way of stock dividend or the sale or other disposition of the said shares of stock." The debenture notes were clearly part of the ordinary revenues of the trust, and were not an increment or accretion realized by way of stock dividend or sale of shares of stock.

It is apparent from the foregoing that, if it be held that petitioner is entitled to receive only the cash income of the trust during her life, the trust will fail as to the noncash income, such as the debenture notes. "If property is transferred upon a trust which fails in part, a resulting trust arises as to the interest with respect to which the trust fails * * *." 2 Restatement of the Law of Trusts, p. 1258, sec. 411. The courts do not favor a construction of the language of a trust instrument which will invalidate the trust in whole or in part if any other interpretation is legitimately possible. The "general scheme of disposition is more significant than words and phrases." *Cohen* v. *Wacht*, 244 N. Y. S. 274; *Bear* v. *Millikin Trust Co.*, 336 Ill. 366; 168 N. E. 349. Here we think the general scheme of disposition was to give the net income of the trust to the petitioner during her lifetime, and to the grantor's sisters and their children after her death. This being our view of the grantor's intention, it follows that we are of the opinion that respondent did not err in including the debenture notes in computing the share of the trust income distributable to petitioner during the taxable years.

The remaining question is, What disbursements made by the trust may be allowed as deductions in computing the income of the trust distributable to petitioner during the years 1936 and 1937?

The trust kept its books on the cash basis. During 1936 it made no disbursements for expenses or otherwise. During 1937 it paid income taxes for the year 1936 in the amount of $1,290 and $45 to the accountants who kept its records and prepared the 1936 return. During 1938 it paid Federal income taxes for the year 1937 in the

amount of $1,247.75, state income taxes for the same year in the amount of $759.65, and an accounting fee of $45.50.

In his original brief respondent urged that all of the income of the trust less actual disbursements represented income currently distributable to petitioner during each of the taxable years. In his reply brief, however, he takes the position that if it should be held that all of the income of the trust, including the debenture notes, was includable in computing the amount of net income currently distributable to petitioner, then the Federal income tax of $1,290 paid by the trustees in 1937 and the Federal income tax of $1,247.75 paid in 1938 were not properly paid and can not be allowed as a reduction of the distributable income, since the trust can obtain a refund of it under section 820 of the Revenue Act of 1938 (I. R. C., sec. 3801), if not otherwise.

Petitioner contends that, in computing the net income of the trust distributable to her during 1936, the income taxes paid by the trustees in 1937 should be deducted, and in making the same computation for 1937, the Federal and state income taxes paid by the trustees in 1938 should be deducted.

This issue must, in our opinion, be decided in favor of the respondent. It is true that the trustees had the power to withhold a reasonable amount of trust income to meet present and anticipated expenses which were properly chargeable to income, and there might be some merit in petitioner's contention if the trust estate were liable for either the Federal or state income taxes on the dividends received by it during the taxable years. Cf. *Frick* v. *Driscoll*, U. S. Dist. Ct., W. Dist. of Pa., Jan. 11, 1941; *Central Hanover Bank & Trust Co. et al., Executors*, 34 B. T. A. 741. In our opinion, however, it was not liable for such taxes. Under the provisions of section 162 (b) of the Revenue Act of 1936, *supra*, as well as under section 2394-28 of the Minnesota income tax law,[2] the income of a trust which is to be distributed currently by the fiduciary to the beneficiary is deductible in computing the taxable net income of the trust. Inasmuch as all of the income of the trust for 1936, and all of its income for 1937 except the amount of $45 expended for accountants' fees, represented

[2] Section 2394-28, Mason's Minnesota Statutes, vol. 3, 1936 Supp. Taxes on Estates—

(a) The taxes imposed by subsection (a) of section 3 of this Act shall apply to the income of estates of decedents; and to the income from any kind of property held in trust * * * whether such income is under the trust terms to be accumulated, currently distributed, or in any other manner disposed of.

(b) The taxable net income of such estate or trust shall be computed in the same manner and on the same basis as in the case of an individual.

\*   \*   \*   \*   \*

(d) There shall be allowed in computing the taxable net income of an estate or trust for its taxable year as an additional deduction the amount of its income which is during such taxable year to be currently distributed * * * or which is during such year lawfully distributed * * * to the beneficiaries, but if such beneficiaries are domiciled within this state, the amount so allowed as a deduction shall be included in computing the taxable net income of such beneficiaries. * * *

income which was currently distributable to the petitioner during those years, the deductions which the trustees were entitled to take under Federal and state laws left no net income subject to tax by either the Federal or state governments in the hands of the trustees. The fact that the trustees erroneously paid income taxes on the income received by them in 1936 and 1937 does not help the petitioner, and the same is true of the trustees' failure to make any distributions of income to her during those years. The test of deductibility of income to the beneficiary of a trust is not "the receipt of income, but the present right to receive it." Where, as here, the trustees are under a duty to distribute the income currently, "then the scheme of the act is to treat the amount so distributable, not as the trust's income, but as the beneficiary's." *Freuler* v. *Helvering*, 291 U. S. 35.

It is our conclusion that all of the income received by the trustees during 1936, and all of the income received by them during 1937, except the $45 expended for accounting fees, was properly included by the respondent in computing petitioner's taxable net income for those years.

*Judgment will be entered for the respondent.*