ESTATE OF HERMAN J. BOSCH, DECEASED, IRVING TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89110. Filed November 3, 1964.

*John A. Clark,* for the petitioner.
*Philip Shurman,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined an estate tax deficiency in the amount of $26,958.77 in respect of the estate of Herman J. Bosch, who died on April 6, 1957, a resident of New York. At issue is whether his surviving spouse's interest in an inter vivos trust created by him qualifies for the marital deduction. The facts have been stipulated.

Bosch created the trust in question on April 9, 1930, to pay the income therefrom to his wife for her life, and upon her death to deliver the corpus to the grantor or his estate. He reserved the right to alter, amend, or revoke,[1] and, pursuant thereto, he amended the

---

[1] The power to alter or amend was conditioned upon the consent of the trustee, but the power to revoke was absolute.

trust only once, on February 6, 1931. Under the amendment, his wife continued to be the life beneficiary, and in addition was given a general power to appoint the remainder by will. The trust thereafter remained subject to his continuing power to alter, amend, or revoke.

On October 25, 1951, in order to prevent the corpus of the trust from being included in *her* gross estate, Bosch's wife executed an instrument purporting to make an irrevocable release of a portion of that power of appointment and thus to convert it into a special power of appointment.[2]

If that release were effective, it is not disputed by petitioner that no marital deduction would be available to the estate in respect of the trust by reason of section 2056(b)(5), I.R.C. 1954.[3] On the other hand, the Government does not challenge the right to the marital deduction if the 1951 attempted partial release were ineffective, thus leaving the trust as providing for a life estate in the grantor's wife together with a general power of appointment over the remainder.

After commencement of the present litigation, and at least in part for the purpose of affecting its outcome, the trustee, on January 25, 1963, filed a petition with the Supreme Court of the State of New York, seeking a determination as to the effectiveness of Mrs. Bosch's 1951 instrument of partial release. An order to show cause was issued, directed to Mrs. Bosch and some 23 other persons, who were possible beneficiaries in the event of Mrs. Bosch's death without exercising her power of appointment. The order also appointed a guardian *ad litem* for one of those persons, who was an infant. Three

---

[2] She released merely the power to appoint "in favor of myself, my estate, my creditors or the creditors of my estate," thereby retaining the power to appoint to all others. The parties are not in disagreement that such remaining broad power is to be classified as a special power.

[3] Sec. 2056(b)(5) provides:

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

\*    \*    \*    \*    \*    \*    \*

(5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

   (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

   (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

briefs were filed in that proceeding, one in behalf of the trustee, the second in behalf of Mrs. Bosch, and the third by the guardian *ad litem* in behalf of the infant. All three briefs argued that under New York law Mrs. Bosch's attempted partial release in 1951, while her husband was still alive and had an unlimited power of revocation, was a nullity. No argument to the contrary was presented to the New York court, which rendered an opinion adopting the position maintained in the three briefs before it,[4] *Matter of Bosch*, N.Y.L.J. (N.Y. Sup. Ct., Spec. Term Nov. 15, 1963), and thereafter, on January 3, 1964, entered judgment in accordance with that opinion.

If the decision of the New York court is to be accepted here that would be the end of the present controversy, for the decedent's wife would be regarded as having a general power of appointment coupled with her life estate, and in such circumstances there is no dispute that the contested marital deduction would be available.

In general, where the operation of the Federal tax law turns upon the nature of property interests created under State law, an adjudication by a State court in respect of the very property interests involved "is final" where that court has jurisdiction over the subject matter and the proceeding is not collusive. *Blair* v. *Commissioner*, 300 U.S. 5, 10. Cf. *Freuler* v. *Helvering*, 291 U.S. 35; *Sharp* v. *Commissioner*, 303 U.S. 624, reversing 91 F. 2d 802 (C.A. 3). However, it has also been held in an impressive number of cases that where the State court proceeding is nonadversary, the decision is not necessarily binding. E.g., *Estate of M. G. Pierpont* v. *Commissioner*, 336 F. 2d 277 (C.A. 4) ; *First Nat. Bank of Montgomery* v. *United States*, 285 F. 2d 123 (C.A. 5), affirming 176 F. Supp. 768 (D. Ala.) ; *Newman* v. *Commissioner*, 222 F. 2d 131, 136 (C.A. 9), affirming 19 T.C. 708; *Wolfsen* v. *Smyth*, 223 F. 2d 111 (C.A. 9) ; *Saulsbury* v. *United States*, 199 F. 2d 578, 580–581 (C.A. 5) ; *Faulkerson's Estate* v. *United States*, 301 F. 2d 231 (C.A. 7), certiorari denied 371 U.S. 887; *Brainard* v. *Commissioner*, 91 F. 2d 880, 883–884 (C.A. 7), certiorari dismissed 303 U.S. 665; *Tatem Wofford*, 5 T.C. 1152; *Estate of Howard E. Stevens*, 36 T.C. 184, 193–194. The law in this field is highly confusing, cf. *Merchants National Bank & Trust Co.* v. *United States*, 246 F. 2d 410, 417 (C.A. 7) ; *Channing* v. *Hassett*, 200 F. 2d 514, 518 (C.A. 1), and, notwithstanding various efforts to spell out distinctions and rationalizations, a number of other

---

[4] The position urged upon the New York court which it adopted was in substance that under New York law a power of appointment created by will could not be exercised (or released) during the testator's lifetime because the will is ambulatory and could be revoked by him at any time, and that petitioner's attempt to release her testamentary power of appointment during her husband's lifetime was likewise a nullity since the entire trust was subject to his unfettered power of revocation until the date of his death.

cases appear to have reached opposite conclusions in seemingly comparable circumstances. E.g., *Flitcroft* v. *Commissioner*, 328 F. 2d 449 (C.A. 9), reversing 39 T.C. 52; *Darlington's Estate* v. *Commissioner*, 302 F. 2d 693 (C.A. 3), reversing 36 T.C. 599; *Beecher* v. *United States*, 280 F. 2d 202 (C.A. 3); *Gallagher* v. *Smith*, 223 F. 2d 218 (C.A. 3); *Eisenmenger* v. *Commissioner*, 145 F. 2d 103 (C.A. 8), reversing 44 B.T.A. 489.

To be sure, it may be possible to reconcile some of these cases, but the results are not always satisfying. For example, a prior decision may be explained away on the ground that there was collusion, but a close inspection of the particular situation would reveal that there was no magic in the term "collusion" and that it was used merely as a more severe characterization of a nonadversary proceeding. E.g., *Stallworth's Estate* v. *Commissioner*, 260 F. 2d 760, 763 (C.A. 5); *In re Sweet's Estate*, 234 F. 2d 401, 404 (C.A. 10), affirming 24 T.C. 488, certiorari denied 352 U.S. 878. On the other hand, the State court decree in some cases in effect merely put a label upon a transaction or characterized a past event or otherwise adjudicated some matter that had no substantial practical consequences to the parties involved apart from Federal tax liability; and in such circumstances it would seem that the decree should be treated as having no binding effect in later tax litigation. Cf. *Newman* v. *Commissioner*, 222 F. 2d 131 (C.A. 9); *Wolfsen* v. *Smyth*, 223 F. 2d 111, 113 (C.A. 9); *M.T. Straight Trust*, 24 T.C. 69, affirmed 245 F. 2d 327 (C.A. 8).

We are not disposed to undertake a comprehensive analysis of all of the cases in this field and to attempt to find a rationalization among them which the appellate courts themselves have been unable satisfactorily to do. We content ourselves here with following the general rule in *Blair* v. *Commissioner*, 300 U.S. 5, and related Supreme Court decisions noted above (p. 122), and we indicate below some of the considerations that we have taken into account.

1. The New York court herein had jurisdiction over the parties and subject matter of the proceeding, and its judgment is final and conclusive as to those parties. As a consequence, Mrs. Bosch now has a general power of appointment which she may exercise in favor of herself, her estate, her creditors, or the creditors of her estate.

2. Although the Supreme Court of the State of New York is a trial court, it is "a single great tribunal of general statewide jurisdiction, rather than an aggregation of separate courts sitting in the several counties or judicial districts of the state." *Schneider* v. *Aulisi*, 307 N.Y. 376, 381, 121 N.E. 2d 375, 377 (1954); see N.Y. State Const., art. 6, sec. 7. Its decision not only adjudicates the rights of the parties but represents legal precedent for courts throughout the State. The situ-

ation is thus quite different from that involving local courts with limited geographical jurisdiction whose decisions are not binding upon other courts elsewhere within the State. *Brainard* v. *Commissioner*, 91 F. 2d 880, 884 (C.A. 7), certiorari dismissed 303 U.S. 665; *Faulkerson's Estate* v. *United States*, 301 F. 2d 231, 232 (C.A. 7), certiorari denied 371 U.S. 887.

3. The Commissioner was fully aware of the proceeding in the New York court, and, had he chosen to do so, could have sought the opportunity to present his views to that court. Indeed, the record before us shows that he agreed to a continuance of the hearing in this Court, so that the New York proceeding might first be brought to a conclusion.

4. The New York court rendered a reasoned opinion and reached a "deliberate conclusion," *Blair* v. *Commissioner*, 300 U.S. at 10. Although, in our judgment, a more persuasive case could possibly be made out for the opposite result, there do not appear to be any contrary decisions and we cannot with confidence say that the New York court was wrong or that its opinion will not be followed by other New York courts.

5. The decision of the New York court, which is binding upon Mrs. Bosch, may have certain offsetting tax consequences in respect of her own estate tax. The New York decree establishing that she has a general power of appointment will result in the inclusion in her gross estate of any property passing under her exercise of that power. Sec. 2041, I.R.C. 1954. And we cannot reasonably assume that she will permit that power to remain unexercised, for there are indications in the record that the immediate natural objects of her bounty do not include all of the many relatives of her husband who would take in default of her exercise of the power. Thus, the State court decree provided more than a label for past events that would affect the present litigation; it authoritatively determined the nature of the power of appointment with potentially adverse tax consequences at a later date.

We emphasize that we reach our conclusion upon the entire record and upon all of the foregoing considerations, taken in the aggregate. Needless to say, one or more of these factors might not be sufficient to tip the scales. Nor is it necessary to say that we are bound by the New York decision. It is sufficient merely to state that, in the foregoing circumstances, we accept the New York decision as an authoritative exposition of New York law and adjudication of the property rights involved.

*Decision will be entered under Rule 50.*