*Decision will be entered under Rule 50.*

ESTATE OF HOWARD E. STEVENS, DECEASED, M. L. COUNTRYMAN, JR., AND MABEL B. STEVENS, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77545. Filed April 28, 1961.

*William C. Canby, Jr., Esq.*, and *William H. Oppenheimer, Esq.*, for the petitioner.

*Leonard A. Hammes, Jr., Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in the estate tax of the above-named estate, in the amount of $11,522.52 before credit for State inheritance taxes. Respondent has now conceded that the petitioners are entitled to the maximum State inheritance tax credit, by reason of their having filed subsequent to the issuance of the notice of deficiency, evidence of payment of the inheritance taxes.

The sole issue for decision is whether the amount of the marital deduction claimed in the estate tax return should be reduced, by adjusting the value of the interests passing to the surviving spouse, to reflect the effect thereon of State inheritance tax, Federal estate tax, and debts and administration expenses which could not be satisfied out of the residue of the probate estate, because of the insufficiency of such residue.

FINDINGS OF FACT.

Most of the facts have been stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference.

Howard E. Stevens (herein called the decedent) died testate on May 26, 1954, a resident of St. Paul, Ramsey County, Minnesota. He left him surviving: His widow, Mabel B. Stevens; two adult children by an earlier marriage, Howard E. Stevens, Jr., and Dorothy Stevens Weber; and also issue of his son Howard. At all times here material, the widow resided in St. Paul; and the daughter, the son, and the son's children all resided in the State of California.

Decedent's last will and testament was admitted to probate in the Probate Court of Ramsey County, Minnesota, on July 20, 1954. And on the same date, the decedent's widow and M. L. Countryman, Jr., of St. Paul, became the duly qualified, acting, and appointed executors of said will. They have, at all times since, continued to act in such capacity.

The decedent created, during his lifetime, two inter vivos trusts which are mentioned in articles Second and Third of his will, and which continued to be in force and effect at the time of his death. One of these trusts was created for the principal benefit of the daughter, Dorothy; and the other was for the principal benefit of the son, Howard. The decedent was both the grantor and trustee of each of these trusts; and he had power thereunder to terminate and cause distribution to the respective beneficiaries. Upon the decedent's death, said son and daughter became the successor trustees.

The decedent's will provided, so far as is here material, as follows:

I, HOWARD E. STEVENS, of the City of Saint Paul, County of Ramsey and State of Minnesota, hereby make, publish and declare this my last will and testament, hereby revoking all wills and codicils heretofore made by me.

FIRST, I direct my executors, hereinafter named, to pay from the principal of my estate my just debts, funeral expenses, expenses of last illness, expenses of administration, and also all estate legacy and inheritance taxes incident to the administration and distribution of my estate as soon as may be convenient after my death.

SECOND, My daughter, Dorothy Stevens Webber [sic.], has been provided for by a Trust Deed created February 21, 1936, modified on March 25, 1937, and again modified on January 10, 1946.

In addition, I hereby give and bequeath to her Five Thousand Dollars ($5,000.00) in cash.

THIRD, My son, Howard E. Stevens, Jr., has been provided for by a Trust Deed created February 21, 1936, and modified March 25, 1937, and again on December 24, 1946.

From time to time I have made and may hereafter make advancements of sums of money to said trust to cover payments from said trust to my son in excess of the trust income, and there are now considerable sums of money due and owing to me from said trust for such advances. I do hereby direct that immediately upon my death all indebtedness of said trust to me or my

estate for such advances, except such part thereof as may exceed the sum of Twelve Thousand Dollars ($12,000.00), shall be cancelled; and I hereby release and discharge said trust and my said son from the payment of all debts due and owing to me or my estate aggregating not more than said sum of Twelve Thousand Dollars ($12,000.00).

*FOURTH*, I direct that all stocks and bonds belonging to me or to which I may be entitled or in which I may have an interest at the time of my death, other than U.S. Savings Bonds, Series "E", be divided into two parcels of substantially equal value. One of such parcels I give and bequeath to my wife, Mabel Benson Stevens, absolutely. The other of said parcels I hereby give and bequeath unto my executors and trustees, hereinafter named, and to their successors and assigns forever.

In Trust, nevertheless, for the uses and purposes in this article Fourth set forth.

[The remaining unquoted portions of this article Fourth contained various provisions pertaining to the administration of said testamentary trust; and provided also, in substance and so far as here material: That the net income of said trust should be paid to the testator's widow, Mabel B. Stevens, during her life or until such time as she remarried; that upon her death or remarriage, the entire principal of the trust fund should be divided into two equal portions or shares; and that thereupon, one of such shares or portions should be set off to each of decedent's children then living, or if not living to his or her lawful issue then living, or otherwise in the manner specifically provided.]

    \*        \*        \*        \*        \*        \*        \*

*SIXTH*, All of the rest, residue and remainder of my property of every kind, nature and description, whether now owned or hereafter acquired by me and wheresoever situated, I hereby give, devise and bequeath to my wife, Mabel Benson Stevens, if she shall survive me \* \* \*.

    \*        \*        \*        \*        \*        \*        \*

*NINTH*, The provisions made for the benefit of my wife are in lieu of, and not in addition to the rights conferred upon her under the statutes of any State in which I may own property at the time of my death.

Said will was executed by the decedent on March 17, 1949.

The decedent's widow did not renounce or refuse to accept the provisions of the decedent's will, either in the manner provided by the Minnesota statutes (Minn. Stat., sec. 525.212 (1953)) or otherwise. Also, she did not remarry.

The widow and Countryman became the trustees of the testamentary trust provided for in the decedent's will; but the evidence does not establish when they, as two of the three nominees under the will, accepted the trust and qualified to act as such trustees. They received no trust assets until after most of the administration of the estate had been completed.

The value of the decedent's gross probate estate (as distinguished from his gross estate for Federal estate tax purposes) was insufficient, after provision for satisfaction of debts, administration expenses, taxes, and other preferred charges, to permit payment in full of all bequests.

The Federal estate tax return for the decedent's estate was filed by the executors with the district director of internal revenue for the

district of Minnesota, on August 26, 1955. In said return, the executors elected not to have the gross estate of the decedent valued as of a date or dates subsequent to decedent's death, under section 811(j) of the 1939 Code; and they reported in said return, gross estate, deductions, and net estate tax payable as follows:

### GROSS ESTATE

| | | |
|---|---:|---:|
| Real estate (mineral interest in city lot) | | $100.00 |
| Stocks and bonds | | 188,960.88 |
| Cash (savings account; and share account at savings and loan association) | | 5,317.09 |
| Life insurance: | | |
| Equitable Life Assurance Society of U.S. | $1,107.00 | |
| Mutual Benefit Life Assurance Co., interest income certificates | 9,497.25 | |
| | | 10,604.25 |
| Jointly owned property: | | |
| Real estate (homestead) | 25,000.00 | |
| Checking account | 15,850.40 | |
| U.S. savings bonds (Series E) | 23,935.00 | |
| | | 64,785.40 |
| Other miscellaneous property: | | |
| Household furniture and fixtures | 2,997.50 | |
| Account receivable from above-mentioned inter vivos trust for decedent's son, Howard | 14,092.30 | |
| | | 17,089.80 |
| Transfers during decedent's life: | | |
| The two above-mentioned inter vivos trusts for the principal benefit of Howard and Dorothy, respectively—each valued at $54,450 | | 108,900.00 |
| Total gross estate | | 395,757.42 |

### DEDUCTIONS

| | | |
|---|---:|---:|
| Funeral and administration expenses | $11,125.39 | |
| Debts of decedent | 5,197.84 | |
| Allowable amount of above deductions | | $16,323.23 |
| Bequests, etc., to surviving spouse | 170,263.09 | |
| Adjusted gross estate | 379,434.19 | |
| Net amount deductible for bequests, etc., to surviving spouse [marital deduction] | | 170,263.09 |
| Total allowable deductions, except specific exemption | | 186,586.32 |

### COMPUTATION OF TAX

| | | |
|---|---:|---:|
| Total gross taxes | | 35,451.33 |
| Credit for State inheritance, etc., taxes | | 1,420.10 |
| Total gross taxes, less credit for State inheritance, etc., taxes | | 34,031.23 |
| Net estate tax payable | | 34,031.23 |

The above-mentioned amount of $170,263.09, claimed as a marital deduction, was computed on Schedule M of the return, as follows:

| *Description of property interests passing to surviving spouse* | *Value* |
|---|---|
| One-half of stocks and bonds (other than Series E bonds) included in gross estate | $94,480.44 |
| Mutual Benefit Life Assurance Co., interest income certificates, included in gross estate | 9,497.25 |
| Jointly owned property, included in gross estate | 64,785.40 |
| Statutory selection out of household furniture and fixtures included in gross estate | 1,500.00 |
| Total | 170,263.09 |

Less:

| | | |
|---|---|---|
| (a) Federal estate tax payable out of the above-listed property interests | None | |
| (b) Other death taxes payable out of above-listed property interests | None | |
| Total of items (a) and (b) | | None |

| | |
|---|---|
| Net value of above-listed property interests [claimed as a marital deduction] | $170,263.09 |

The respondent issued the statutory notice of deficiency herein on August 15, 1958; and he therein determined the deficiency in estate tax, hereinabove mentioned. In determining such deficiency, he made only two adjustments to the net estate before exemptions as disclosed by the return, which adjustments were as follows:

| | |
|---|---|
| (a) Additions to value of stocks and bonds | $1,801.50 |
| (b) Decrease in marital deduction | 31,873.24 |

Petitioners have now conceded that the first of these adjustments, pertaining to the value of the stocks and bonds, is correct.

Respondent's explanation of his adjustment to the claimed marital deduction is set forth in the statement attached to his notice of deficiency, as follows:

| (b) *Marital deduction* | *Returned* | *Corrected* |
|---|---|---|
| Item 1 | $170,263.09 | $138,389.85 |
| Adjustment | 31,873.24 | |
| | $138,389.85 | |

To adjust marital deduction to property passing to spouse at the date of decedent's death.

COMPUTATION

| | |
|---|---|
| Insurance | $9,497.25 |
| Joint tenancy | 64,785.40 |
| Statutory selection | 1,500.00 |
| One-half stocks and bonds Schedule B per return [as adjusted] | 95,381.19 |

| | | |
|---|---|---|
| Property passing to spouse before deduction of inheritance tax and spouse share of expenses paid over residue and estate tax | | $171,163.84 |
| State inheritance tax | $6,153.75 | |
| *46% of expense | 5,665.52 | |
| 46% of Federal estate tax | 20,954.72 | 32,773.99 |
| Marital Deduction | | $138,389.85 |

*Spouse's proportionate share of expenses after excess of residue.

COMPUTATION OF RESIDUE

| | | |
|---|---:|---:|
| Gross estate as corrected | | $397, 558. 92 |
| Less: Insurance | $10, 604. 25 | |
| Joint property | 64, 785. 40 | |
| Transfer | 108, 900. 00 | 184, 289. 65 |
| | | |
| Gross Probate Estate | | $213, 269. 27 |
| Bequests: | | |
| Son | $12, 000. 00 | |
| Daughter | 5, 000. 00 | |
| Trust ½ of [Schedule] B | 95, 381. 19 | |
| Stock to wife | 95, 381. 19 | |
| Selection | 1, 500. 00 | 209, 262. 38 |
| | | |
| Residue | | $4, 006. 89 |
| Debts & charges [per estate tax return] | | 16, 323. 23 |
| | | |
| Debts & charges in excess of residue | | $12, 316. 34 |
| Spouse share $\dfrac{96, 881. 19}{209, 262. 38}$ | | 46% |
| | | |
| | | $5, 665. 52 |

As regards respondent's adjustment of the value of the property passing to the surviving spouse, to reflect the State inheritance tax attributable thereto, the parties have stipulated herein that the correct amount of "the state inheritance tax computed and paid on the property passing to the spouse, Mabel B. Stevens," is $6,111.42.

OPINION.

The issue here presented involves the application of the estate tax provisions of the Internal Revenue Code of 1939; and more particularly, the amount of the marital deduction which is allowable under section 812(e) of said Code. Petitioners have conceded the correctness of respondent's adjustment to the amount of the gross estate for estate tax purposes (which is different from the gross estate for probate). But they dispute the correctness of the respondent's determination that, in computing the amount of the marital deduction, the value of the property passing to the surviving spouse at the date of the decedent's death should be reduced, in the circumstances here present, by adjustments in respect to: (a) State inheritance tax; (b) part of the Federal estate tax; and (c) part of the debts and administration expenses which could not be satisfied out of the residue of the probate estate, because of the insufficiency of such residue.

Petitioners contend that no reduction in the amount of the claimed marital deduction should be made. They have the burden of establishing error in the respondent's determinations to the contrary.

1. *Re adjustment in respect of State inheritance tax.*—The decedent, in article First of his will, directed his executors to pay from the principal (as distinguished from the income) of his estate, his just debts, funeral expenses and expenses of his last illness, expenses of administration, "and also all estate legacy and inheritance taxes incident to the administration and distribution of my estate," as soon as might be convenient after his death.

The Minnesota inheritance tax is imposed, not on the estate of the decedent or on the privilege of transferring the same, but rather on the privilege of the beneficiaries to receive distributions of property from the estate. The Minnesota statute pertaining to inheritance taxes (Minn. Stat. (1953)) provides in part as follows:

Sec. 291.12 (1). Any administrator, executor or trustee having in charge or in trust any property for distribution embraced in or belonging to any inheritance, devise, bequest, legacy or gift, subject to the tax thereon as imposed by this chapter, shall deduct the tax therefrom, before paying or distributing the same. * * * He shall not deliver, or be compelled to deliver, any property embraced in any inheritance, devise, bequest, legacy or gift, subject to tax under this chapter, to any person until he shall have collected the tax thereon. * * *

The Minnesota statute further provides in substance, in section 291.14 thereof, that every inheritance tax imposed thereunder shall be "a lien" upon the property embraced in any inheritance, devise, bequest, legacy, or gift until paid; and that the person to whom such property is transferred, and also the administrators, executors, and trustees of every estate embracing such property, shall be "personally liable" for such tax to the extent of such property. All of the above-mentioned statutory provisions were in effect at the time when the decedent executed his will, at the time of decedent's death, and at the time when the estate tax return for his estate was filed.

The decedent's will contains no provision to the effect that the executors should be relieved from claiming reimbursement for any State inheritance taxes paid by them—either from the beneficiaries, or out of the distributions from the estate, in respect of which such inheritance taxes were imposed. Nor is there any indication in the will that any beneficiary should, in any event, bear the inheritance tax imposed on any other beneficiary's privilege to receive distributions. And, even if article First of the will could be construed (which we do not here decide) to have the effect of making additional residuary gifts to the beneficiaries, in amounts equal to the inheritance taxes imposed on their respective distributions (see, in this connection, *In re Estate of Bowlin*, 189 Minn. 196, 248 N.W. 741), the petitioners have conceded herein that the residue of the probate estate is insufficient to permit payment of any residuary gifts, and that all residuary gifts must be abated.

We hold that petitioners have failed to carry their burden of establishing error in respondent's determination—which determination was that the claimed marital deduction should be reduced, to reflect the effect on the value of the property passing to the surviving spouse, of the State inheritance tax imposed on said spouse's privilege to receive such property. See *Estate of Edward V. Babcock*, 23 T.C. 888, revd. 234 F. 2d 837. We further hold, in view of the stipulation of the parties as to the amount of said inheritance tax, that the claimed marital deduction should be reduced in respect of such inheritance tax, by the amount of $6,111.42.

2. *Adjustment in respect of debts and administration expenses.*— The decedent's will contains no provision respecting the order or manner in which bequests should abate, in a situation like the present where the residue of the probate estate is insufficient to permit satisfaction therefrom of all debts and administration expenses. Also, there is no Minnesota statute which makes provision for such situation. We are convinced however, from the testimony received herein and from consideration of Minnesota authorities pertaining to this subject (see 1 Dunnell, Minnesota Probate Law, sec. 395 (Mason's ed. 1949); 20 Dunnell, Minnesota Digest, sec. 10285a (3d ed. 1956); and 1 Patton, Minnesota Probate Law and Practice, sec. 359 (1955)) that the rule generally followed and applied in Minnesota, as to the order and manner in which bequests and devises should be abated in a situation like the present, is in substance as follows:

(a) Debts and expenses of administration of an estate are charged first, against personal property included in the residue; and after such personal property is exhausted, said items are charged against any real property in the residue.

(b) Upon the exhaustion of both real and personal property in the residue, debts and administration expenses are charged next, against cash legacies (frequently called general legacies), on a pro rata basis.

(c) After both the residue and the general legacies are exhausted, said preferred items are next charged against specific legacies of personal property, on a pro rata basis; and after such legacies also are exhausted, said items are charged against specifically devised real property, on a pro rata basis.

(d) The above rules are applicable in respect of testamentary gifts to the decedent's widow in the same manner as in respect of testamentary gifts to other beneficiaries, in the absence of contrary directions in the decedent's will.

Applying the foregoing Minnesota rule in the instant case, it appears that both the residue of the probate estate and also the cash

legacy of $5,000 to the daughter Dorothy would be exhausted by first charging the debts and administration expenses against the same; and that the remaining portion of said preferred items is chargeable pro rata, against (a) the specific legacy of $12,000 to the son Howard, and (b) the specific legacy of stocks and bonds to the testamentary trust, and (c) the specific legacy of stocks and bonds to the decedent's surviving spouse.

We hold that said Minnesota rule for abatement of legacies is here applicable; and that the amount of the marital deduction claimed in the estate tax return, should be reduced (in addition to other reductions herein approved) to reflect, through application of said Minnesota rule, the effect on the value of the property passing to the surviving spouse, of the debts and administration expenses which could not be satisfied out of the residue of the probate estate, because of the insufficiency of such residue.

3. *Adjustment in respect of Federal estate tax.*—The statutes of Minnesota contain no provision respecting apportionment of Federal estate taxes; nor do they provide how the impact of such taxes must fall upon a decedent's property, in a situation like the present. (See, in this connection, *Gelin* v. *Gelin*, 229 Minn. 516, 40 N. W. 2d 324.) The Supreme Court of Minnesota has approved the principle of treating the Federal estate tax as an expense of administration. *State ex rel. Smith* v. *Probate Court of Hennepin County*, 139 Minn. 210, 166 N. W. 125. Also, our Court has held, in *Estate of Rosalie Cahn Morrison*, 24 T. C. 965, that the general rule in both State and Federal courts is that, when neither the decedent's will nor the law of the State provides otherwise, the Federal estate tax is to be paid out of the residue (if the residue is sufficient).

We hold that petitioners have failed to establish error in the method employed by respondent in his notice of deficiency, of treating Federal estate taxes in the same manner as debts and administration expenses. We further hold, in accordance with our foregoing holding with respect to debts and administration expenses, that the marital deduction claimed in the estate tax return should be reduced (in addition to other reductions herein approved) in such manner as to reflect, through application of said method employed by respondent, the effect on the value of the property passing to the decedent's surviving spouse, of the Federal estate tax imposed on the decedent's estate.

4. In making the foregoing holdings, we have rejected petitioners' contention to the effect that neither the respondent nor this Court is entitled to adjust the value of the property passing to the surviving spouse, on account of inheritance tax, Federal estate tax, and debts and administration expenses; because they believe any such adjustment would be inconsistent with the treatment accorded to such pre-

ferred items in a certain order entered in the Probate Court and also in a so-called "final accounting" of the executors. Their position is that we should approve the amount of the marital deduction claimed in the estate tax return, which was computed by charging none of said preferred items to the widow and by providing for satisfaction of these items through abatements made in the following unusual manner: None of the cash legacy of $5,000 to the daughter Dorothy was abated, and also none of the specific legacy of $12,000 to the son Howard was abated; substantially all of the Federal estate tax attributable either to the probate property or to the nonprobate property, and all of the debts and administration expenses which could not be satisfied out of the residue, were charged against the specific legacy to the testamentary trust; the Minnesota inheritance tax imposed on the property passing to the widow also was charged against the specific bequest to the testamentary trust; and the Minnesota inheritance tax imposed on property passing to the son, Howard, and the daughter, Dorothy, was charged to said beneficiaries, personally.

We do not agree with the petitioners' aforesaid contention; and we regard the foregoing method for abatements to be both legally and logically unjustifiable. Our examination of such portions of the Probate Court record as are before us, convinces us that the order of said court upon which petitioners rely, was obtained in a *nonadversary proceeding*. All petitions and orders relating to such proceeding were prepared by counsel for petitioners; the order was advisory in character, and was premised on a hypothetical possibility respecting the inclusion of the inter vivos trust in the probate estate; and the scope of the order is more limited than that attributed to it by petitioners. The petition for such order was presented to the Probate Court pursuant to a plan for dissolving the inter vivos trusts which were not then included in the probate estate; and the so-called "consents" which were presented in support of the petition for said order, were signed only by contingent remaindermen of the testamentary trust, whose interests in said trust would not vest unless they survived the decedent's widow who was then living.

We are further convinced that the Probate Court's approval of the executors' so-called "final accounting," also was obtained by counsel for petitioners in a *nonadversary* proceeding—notwithstanding that petitioners' counsel was aware at the time when such account was presented for approval, that decedent's son and daughter who resided in California, were expressing dissatisfaction with the manner in which the debts, taxes, and administration expenses were being charged.

Both this Court and others have held that an adjudication of property rights by a State court, resulting from a *nonadversary* proceed-

194

ing, is not binding or determinative either on the Commissioner of Internal Revenue, or in a Federal court proceeding pertaining to Federal estate tax liability—particularly where the same appears to be at variance with the law of the particular State involved. *Estate of Ralph Rainger*, 12 T.C. 483, affirmed per curiam 183 F. 2d 587 (C.A. 9) ; *Merchants National Bank & Trust Co.* v. *United States*, 246 F. 2d 410 (C.A. 7) ; *Saulsbury* v. *United States*, 199 F. 2d 578 (C.A. 5). See also, in this connection: *First National Bank of Montgomery* v. *United States*, 285 F. 2d 123 (C.A. 5) ; *Indiana National Bank of Indianapolis* v. *United States*, 191 F. Supp. 73 (S.D. Ind.) ; Regs. 105, sec. 81.30.

5. We have rejected also, a contention of petitioners that all property passing to decedent's surviving spouse was acquired by her by "purchase," because she had a privilege (which she did not elect to exercise) to renounce the will and take a statutory interest in the decedent's estate; and that by reason of such "acquisition by purchase," no reduction in the claimed marital deduction should be made, to reflect the effect of State inheritance tax, Federal estate tax, or debts and administration expenses.

The evidence does not establish that the surviving spouse did acquire by purchase any of the estate property which passed to her at the time of the decedent's death; and we have concluded that she did not so acquire the same. The applicable Treasury regulations pertaining to the estate tax specifically provide in substance, that where a surviving spouse elects to take under the will, the dower or other property interest relinquished by her is not considered as having "passed from the decedent to his surviving spouse"; and that the interest taken by the spouse under the will is considered as having so "passed" if it otherwise qualifies for marital deduction purposes. (Regs. 105, as amended by T.D. 5699, 1949–1 C.B. 181, sec. 81.47(a) (f).)

As regards the case of *In re Paulson's Estate*, 208 Minn. 231, 293 N.W. 607 (1940), upon which petitioners rely for support of their "purchase" theory, the decision therein appears to have been based upon the unusual facts of said case, which are different from the facts of the instant case. Said decision does not appear to have been cited for the point in question in any subsequently reported case; and evidence received in the instant case indicates that said decision does not appear to have affected the generally applied Minnesota rule above mentioned, respecting abatement of legacies. We regard the *Paulson* case to be distinguishable from the present case, and not determinative of the issue here involved.

*Decision will be entered under Rule 50.*