*Decision will be entered under Rule 50.*

ESTATE OF ISAAC G. DARLINGTON, PROVIDENT TRADESMENS BANK AND TRUST COMPANY AND CLAUDE C. SMITH, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80627. Filed June 30, 1961.

*Joseph W. Price 3d, Esq.*, for the petitioner.
*Edward L. Newberger, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioner's estate tax of $12,635.38. The sole question for decision is whether the petitioner is entitled to a deduction for Pennsylvania inheritance tax paid on amounts passing to charities under section 2053(d) of the Internal Revenue Code of 1954.[1]

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

FINDINGS OF FACT.

Some of the facts have been stipulated. They are found accordingly.

Petitioner, the Estate of Isaac G. Darlington, filed its estate tax return with the district director of internal revenue at Philadelphia, Pennsylvania, on January 10, 1958.

Isaac G. Darlington died testate on October 10, 1956. He was a resident of Swarthmore, Delaware County, Pennsylvania, at the time of his death.

In addition to certain pecuniary and specific bequests, all of which have been paid in full, the decedent by his will devised and bequeathed his residuary estate as follows:

> 1/10 to each of five cousins.
> 11/25 to Swarthmore College.
> 1/50 to American Friends Service Committee.
> 1/50 to Salvation Army.
> 1/125 to West Chester Friends Meeting.
> 1/125 to Taylor Hospital.
> 1/250 to Delta Upsilon Fraternity.

Swarthmore College, West Chester Friends Meeting, American Friends Service Committee, Salvation Army, and Taylor Hospital are organizations with respect to which bequests, legacies, devises, or transfers are deductible under section 2055 in determining the taxable estate.

Paragraph Ninth of decedent's will is as follows:

*NINTH:* I direct that any and all inheritance, estate, succession, transfer and other death taxes that may be assessed in consequence of my death, of whatever nature and by whatever jurisdiction imposed, and regardless of the nature and ownership of the property at the time of my death on which the same may be assessed or imposed or to which the same may be attributed, shall be paid out of the principal of my residuary estate; and my executors and trustees shall have the absolute power in their discretion to pay the same at once, whether or not the law under which the same are imposed permits the postponement of payment of all or part of them to a later time.

On September 3, 1957, the executors filed an inheritance tax return with the Commonwealth of Pennsylvania setting forth gross assets of $1,507,860.03 and deductions of $119,398.85, reflecting a net taxable estate for Pennsylvania transfer inheritance tax purposes of $1,388,461.18 and resulting in a tax of $198,519.18, which has been paid.[2] Of this amount $62,828.72 represents Pennsylvania inheritance taxes paid with respect to the bequests passing to the five charities mentioned above.

In computing the taxable estate for Federal estate tax purposes the executors elected to take the said amount of the Pennsylvania

---

[2] Prompt payment of a portion of the tax due resulted in a discount of $9,750. The amount due without taking the discount into account was $208,269.18.

inheritance taxes paid on the charitable bequests as a deduction under section 2053(d). The amount of tax shown on the estate tax return, computed taking said deduction into account, was $320,597.60. It was paid at the time of filing said return.

In April 1959, respondent issued a deficiency notice to the petitioner in which he determined a deficiency in estate tax of $12,635.38. The determination resulted from respondent's disallowance of the deduction for the amount of Pennsylvania inheritance taxes on the bequests to the charities. In explanation of the disallowance, the statutory notice stated:

Deduction is not allowable for Pennsylvania Inheritance Tax imposed on the bequests to charity because the resulting tax benefit does not inure solely to the benefit of charity. See Section 2053(d)(2) * * * and Regulations 20:2053(9)(b).

In June 1959, after filing a petition with this Court, the executors paid $13,728.08 to the district director at Philadelphia representing the deficiency and interest due thereon.

In October 1957, the Orphans' Court of Delaware County, Pennsylvania, confirmed the first and final account of the executors of the estate. In accord with the requirements of the adjudication, a schedule of distribution was filed and approved by the said court in August 1959.

On July 12, 1960, the executors filed a petition in the said Orphans' Court entitled "PETITION FOR CITATION TO SHOW CAUSE WHY ADJUDICATION SHOULD NOT BE RE-OPENED." This petition stated, in part, as follows:

7. Your Petitioners have been advised and, therefore, aver that the estate tax deficiency of approximately $12,000 will be expunged only upon showing to the said Tax Court of the United States that the savings in estate tax resulting from claiming the inheritance taxes attributable to the charitable and religious legatees as a deduction will inure solely for the benefit of such charitable and religious legatees.

8. Your Petitioners have been advised and, therefore, aver that unless the Adjudication is amended to provide that all said savings should inure solely for the benefit of such of the parties entitled to the residuary estate as are recognized charities under the Internal Revenue Code and supporting regulations, a deficiency in excess of $12,000 in Federal Estate Tax will have to be paid at the expense of all of the residuary legatees.

WHEREFORE, your Petitioners respectfully request your Honorable Court to issue a citation to show cause why the Adjudication of your Honorable Court dated October 24, 1957, should not be re-opened in order that it may be amended to provide that all savings which may be derived through the election of the Executors to treat Pennsylvania Inheritance Taxes on charitable gifts as a deduction rather than as a credit against Federal Estate Tax shall inure solely for the benefit of such of the parties interested in the residue of the estate as are recognized as charities under the Internal Revenue Code and supporting regulations, * * *

On July 18, 1960, the petition was granted by the Orphans' Court and citations were served on the remaindermen directing them to show cause why the adjudication should not be reopened. On August 18, 1960, a hearing was held in open court. At this hearing the attorney for the executors briefed and argued his position. No opposing argument or briefs were presented by any other party in interest nor did any other attorney enter an appearance. The Orphans' Court on September 1, 1960, issued a memorandum opinion [3] and the following day issued an amended adjudication in which it granted the prayer of the petition, reopened the adjudication, and amended it by adding the following provisions:

All savings which may be derived through the election of the Executors to treat Pennsylvania Inheritance Taxes on charitable gifts as a deduction in computing the taxable estate for Federal estate tax purposes rather than as a credit against Federal Estate Tax shall inure solely for the benefit of such of the parties interested in the residue of the estate as are recognized as charities under the Internal Revenue Code and supporting regulations.

Any decrease in the Federal Estate Tax arising by reason of the Executors' election to claim the inheritance tax payable on the charitable legacies as a deduction shall inure solely to the benefit of the charities in the proportions that the inheritance tax paid on each bequest bears to the total inheritances [sic] taxes paid on charitable bequests.

## OPINION.

A deduction is allowed a decedent's estate under section 2053(d) [4] for the amount of any inheritance tax imposed by a State upon a

---

[3] Reported at 22 D. & C. 2d 461 (Pa.) and 10 Fid. Rep. 555 (Pa., 1960).

[4] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(d) CERTAIN STATE AND FOREIGN DEATH TAXES.—

(1) GENERAL RULE.—Notwithstanding the provisions of subsection (c)(1)(B) of this section, for purposes of the tax imposed by section 2001 the value of the taxable estate may be determined, if the executor so elects before the expiration of the period of limitation for assessment provided in section 6501, by deducting from the value of the gross estate the amount (as determined in accordance with regulations prescribed by the Secretary or his delegate) of—

(A) any estate, succession, legacy, or inheritance tax imposed by a State or Territory or the District of Columbia upon a transfer by the decedent for public, charitable, or religious uses described in section 2055 or 2106(a)(2), and

(B) any estate, succession, legacy, or inheritance tax imposed by and actually paid to any foreign country, in respect of any property situated within such foreign country and included in the gross estate of a citizen or resident of the United States, upon a transfer by the decedent for public, charitable, or religious uses described in section 2055.

The determination under subparagraph (B) of the country within which property is situated shall be made in accordance with the rules applicable under subchapter B (sec. 2101 and following) in determining whether property is situated within or without the United States. Any election under this paragraph shall be exercised in accordance with regulations prescribed by the Secretary or his delegate.

(2) CONDITION FOR ALLOWANCE OF DEDUCTION.—No deduction shall be allowed under paragraph (1) for a State death tax or a foreign death tax specified therein unless the decrease in the tax imposed by section 2001 which results from the deduction provided in paragraph (1) will inure solely for the benefit of the public, charitable, or religious transferees described in section 2055 or section 2106(a)(2). In any case where the tax

transfer by decedent for charitable uses, subject to one of two conditions: Either that the decrease in Federal estate tax resulting from the allowance of the deduction inures solely to the benefit of charitable transferees, or that the Federal estate tax is equitably apportioned. Both parties agree there was no equitable apportionment. Petitioner has the burden of proving that the decrease in Federal estate tax resulting from the allowance of the deduction inures solely to the benefit of the charitable transferees.

Petitioner argues that section 2053(d)(2) establishes no Federal criterion for determining how the benefit of the deduction in said section shall inure solely to the benefit of charitable legatees. In the absence of such criterion, petitioner contends, the inurement is to be decided under the applicable State law. The Orphans' Court has examined the State law, petitioner argues, and it has decided that as a matter of Pennsylvania law the charitable legatees are entitled to the benefit of the deduction. Petitioner then concludes that the Orphans' Court proceedings are conclusive and binding on us. Respondent's position, in general, is the negative of the above arguments, and, more particularly, he argues that the Orphans' Court decree is not binding on us because not resulting from an adversary proceeding, because that court lacked jurisdiction of the question it decided, and because in any event the Orphans' Court decision was wrong.

The first question is whether the State court decree has any effect on the proceedings before this Court. Assuming that the State court had jurisdiction of the question presented to it and that property rights were adjudicated, we still must conclude that the State court decree is not binding on this Court for two reasons: The decree was not the result of an adversary proceeding and in any event the decree by its very terms contemplates a decision on the merits by this Court in petitioner's favor before it is to take effect.

This Court is bound to follow a State court decision settling property rights only if it is entered in a proceeding presenting a real controversy for determination. "The decision must settle issues regularly submitted and must not be, in any sense, a consent decree." *Tatem Wofford,* 5 T.C. 1152; see also *Leslie H. Green,* 7 T.C. 263, affd. 168 F. 2d 994.

We have recently considered this question. In *Estate of Howard E. Stevens,* 36 T.C. 184, the taxpayer contended that the order of the local Probate Court in abating legacies should be followed for purposes of determining the amount of the marital deduction. We de-

imposed by section 2001 is equitably apportioned among all the transferees of property included in the gross estate, including those described in sections 2055 and 2106(a)(2) (taking into account any exemptions, credits, or deductions allowed by this chapter), in determining such decrease, there shall be disregarded any decrease in the Federal estate tax which any transferees other than those described in sections 2055 and 2106(a)(2) are required to pay.

clined to find the order of the State court binding because it resulted from a nonadversary proceeding, even though it appeared at the time of the order there may have been some unrepresented adverse interests. Other cases in which this question has arisen have established criteria for the disposition of it. Thus, the issue before the State court must be a real controversy. *Estate of Ralph Rainger*, 12 T.C. 483, affd. 183 F. 2d 587; the fact that interested parties had notice but failed to plead or appear tends to show a nonadversary proceeding; *Estate of Arthur Sweet*, 24 T.C. 488, affd. 234 F. 2d 401; the fact that the proceedings before the State court were instituted after the receipt of the deficiency notice and dealt with the exact question in issue opens the State court's decree to question, *Estate of Arthur Sweet*, *supra*, *Leslie H. Green*, *supra*; a State court's decision rendered in almost the exact language of the complaint tends to show nonadversary proceedings, *Estate of Arthur Sweet*, *supra*, *Leslie H. Green*, *supra*.

In this case we can find no interest which was adverse to that of the charities in their cause before the Orphans' Court. The individual residuary legatees could not benefit regardless of the decree of the Orphans' Court and they did not appear at the hearing. The counsel for the executors appeared, made an oral statement of the case, and filed a brief. No witnesses took the stand; there was no opposing evidence, testimony or arguments, and, of course, no cross-examination. The Orphans' Court reached its decision with no adversary record before it. The opinion and decree of the Orphans' Court followed closely the language of the executors' petition. (See excerpts in our discussion below.) The petition to reopen was filed after the issuance of the statutory notice disallowing the claimed deduction. Although it is not clear, as respondent argues, that all of the residuary legatees joined in the submission of the issue, in this case it was not necessary for them to do so, because as we have stated, the individual residuary legatees were unaffected by the respondent's determination.

We think that these factors taken together demonstrate that this case is within the rule of cases in this and other courts which deny effect to collusive, consent, or nonadversary decrees in other fora. A nonadversary proceeding instituted in a State court for the sole purpose of circumventing the effect of a deficiency notice is not binding on us. *In re Sweet's Estate* v. *Commissioner*, 234 F. 2d 401, affirming 24 T.C. 488; *Leslie H. Green*, *supra*; *First National Bank of Montgomery* v. *United States*, 176 F. Supp. 768. We consider the decree of the Orphans' Court to be such. We therefore conclude it is not binding on us. Cf. *Gallagher* v. *Smith*, 223 F. 2d 218.

There is also a second reason which makes it unnecessary for us to follow the Orphans' Court. A careful reading of the petition, opinion, and decree of the Orphans' Court discloses the following: The petition states, in part:

WHEREFORE, your Petitioners respectfully request your Honorable Court to * * * [amend the final adjudication] to provide that all savings *which may be derived* through the election of the Executors to * * * [claim the sec. 2053(d) deduction] rather than as a credit against Federal Estate Tax shall inure solely for the benefit of [the] * * * charities * * * [Emphasis added.]

The memorandum opinion of the Orphans' Court, after reciting that it is based on "the equitable principles which govern death tax apportionments" states, in part:

Accordingly, the adjudication of this court * * * will be amended to provide that all savings *which may be derived* through the election of the Executors to * * * [claim the sec. 2053(d) deduction] rather than as a credit against Federal Estate Tax shall inure solely for the benefit of [the] * * * charities * * *; and any decrease in the Federal Estate Tax arising by reason of the Executors' election to claim [the sec. 2053(d) deduction] shall inure solely to the benefit of the charities in the proportions that the inheritance tax paid on each bequest bears to the total inheritance taxes paid on charitable bequests. [Emphasis added.]

The amended adjudication of the Orphans' Court provides, in part:

All savings *which may be derived* through the election of the Executors to treat Pennsylvania Inheritance Taxes on charitable gifts as a deduction in computing the taxable estate for Federal estate tax purposes rather than as a credit against Federal Estate Tax shall inure solely for the benefit of such of the parties interested in the residue of the estate as are recognized as charities under the Internal Revenue Code and supporting regulations. [Emphasis added.]

We find nothing in the petition, the opinion, or the decree, and more particularly in the language just cited from them, which precludes our approaching the issue of the deduction as if there had been no proceedings in the Orphans' Court. It is abundantly clear that the Orphans' Court decree, couched as it is in the future conditional tense, awaits the decision of this Court to bring it to viability. It says, in effect, that should we first uphold the deduction, then equitable principles require that the benefit of the deduction must be given to the charities. We can find nothing in the language of the Orphans' Court opinion, or for that matter in the petition to it, which establishes any right of the charitable remaindermen *prior* to the decision of this Court. All references therein are conditioned upon our ultimate decision in this case. In *Estate of Howard E. Stevens, supra,* we said that a State court decree "premised on a hypothetical possibility" would not be followed. As we read the Orphans' Court decree,

it is no more than an indication that once this Court has decided that the benefit of the claimed deduction will inure solely for the benefit of charity, then the Orphans' Court will insure that it does. This leaves us with the original question of whether the deduction claimed by the petitioner will so inure. We hold that it will not.

The decedent's will provides that both charitable and noncharitable beneficiaries are to receive fractional shares of the residuary estate. In addition, the will provides that all taxes should be paid from the residuary estate. If only the charitable beneficiaries were to have received the residuary estate, any decrease in tax resulting from claiming the State inheritance taxes as a deduction would inure solely to the benefit of the charities. See sec. 20.2053–9.(e), ex. 1, Estate Tax Regs. Here, however, noncharitable legatees share in the residue.

The tax clause of the will is clear and unambiguous. It provides that all taxes shall be paid out of the "principal of my residuary estate." In *North's Estate*, 50 D. & C. 703 (Pa.), which dealt with charitable and noncharitable residuary gifts and which contained a tax clause very similar to that here, the court held that calculation and payment of the Federal estate tax on residuary gifts must precede distribution to the beneficiaries. This case was cited with approval and relied on by the Supreme Court of Pennsylvania in *In re Audenried's Estate*, 376 Pa. 31, 101 A. 2d 721.[5] The Orphans' Court in its memorandum opinion cited both these cases and related that the executors "have followed the holding of *Audenried* * * * by computing the fractional residuary shares of the charities after first deducting from the principal of the residue the taxes on the other residuary bequests." We think it follows inescapably that if the residue is to be divided up between charitable and noncharitable beneficiaries after the payment of taxes, any decrease in taxes occasioned by the deduction under section 2053(d) increases the residue and the distributive share of the noncharitable as well as the charitable beneficiaries. It is, therefore, impossible under this will that the putative decrease in Federal estate tax can inure solely to the benefit of the charitable remaindermen.

We hold petitioner is not entitled to the section 2053(d) deduction because it has not shown that it meets the conditions of section 2053(d)(2).

Because of other adjustments not in controversy—

*Decision will be entered under Rule 50.*

---

[5] Accord, *Haehnlen Estate*, 10 Fid. Rep. 567 (Pa., 1960), which had a tax clause containing language identical to that in the decedent's will here. The Orphans' Court in *Haehnlen* held that the taxes were payable out of the residue before it was to be divided into shares for distribution to the residuary legatees, several of which were charities.