ESTATE OF FRANK HAGENLOCHER, DECEASED, WILLIAM HAGENLOCHER, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92990. Filed September 8, 1964.

---

*Charles Arthur Blass* and *William E. Pfadt*, for the petitioner.
*Charles A. Boyce*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in the Federal estate tax of petitioner in the amount of $10,609.25. All other adjustments having been conceded by the petitioner, the sole issue remaining for decision is whether two judgments of record held by Frank Hagenlocher should be included in his gross estate.

FINDINGS OF FACT

The stipulated facts are hereby found accordingly.

Frank Hagenlocher (hereinafter sometimes referred to as decedent) died intestate on March 1, 1957. Decedent was a resident of Erie, Erie County, Pa.

Decedent's heirs were his two brothers, William and Ernest, and his two sisters, Edith Brubaker and Anna Hagenlocher. On March 28, 1957, William was appointed guardian of Anna, a legally declared incompetent.

On March 6, 1957, William was appointed administrator of decedent's estate. William was discharged as fiduciary of the estate by order of the Orphans' Court of Erie County, Pa. (hereinafter referred to as Orphans' Court) on December 9, 1960. He was reappointed administrator *de bonis non* by the same court on October 11, 1961.

An estate tax return, Form 706, was filed for the estate with the district director of internal revenue, Pittsburgh, Pa., on November 4, 1957, reflecting a "total gross estate" of $206,593.50, a "taxable estate" of $128,372, and "net estate tax payable" of $28,197.65.

William filed a first and final account of his administration of decedent's estate on April 10, 1958, at No. 7, May list 1958, in the Orphans' Court. On May 29, 1958, an adjudication and decree was entered by the Orphans' Court on the schedule of distribution submitted by William.

On June 9, 1958, Edith, by her attorney, John A. Spaeder (hereinafter referred to as Spaeder), filed in the Orphans' Court a "Petition for Leave to Except Generally to Adjudication and Decree and to File Exceptions Nunc Pro Tunc to Inventory and Account of Fiduciary." Subsequently, an order was entered by the Orphans' Court allowing Edith's exceptions *nunc pro tunc* to William's first and final account.

The exceptions filed by Edith concerned the omission from William's first and final account of two judgments in the name of decedent against William, which were filed at Nos. 268 and 269, February term 1956, in the Court of Common Pleas, Erie County, Pa. (hereinafter referred to as Court of Common Pleas). As of the date of de-

cedent's death, No. 268 was for the principal amount of $7,500, with accrued interest of $11,187.75, and No. 269 was for the principal amount of $9,359.43, with accrued interest of $7,427.86.

Shortly after the court order allowing the exceptions, William filed an answer to the exceptions. The answer alleged that the two judgments had been assigned by decedent to William's wife, Lillian.

On October 27, 1960, a "Petition to Approve Stipulation and Family Agreement," with an attached stipulation and family agreement, was filed with the Orphans' Court.

Edith had been advised by Spaeder to accept in settlement the sum of $6,500, which amount was her one-quarter interest in the judgments plus accrued interest less the additional Pennsylvania collateral inheritance tax and Federal estate tax on the increased gross estate. As part of the stipulation and family agreement, William agreed personally to pay Edith the sum of $6,000.

The stipulation and family agreement stated in part:

In consideration of performance of the foregoing acts by William * * * personally, Edith * * * will release and disclaim all further exceptions that she has heretofore filed or proposed in [decedent's estate] and the estate of Anna * * *, an Incompetent, under the guardianship of William * * *, [as] guardian.

An order was entered by the Orphans' Court on November 21, 1960, approving the stipulation and family agreement. There was no final adjudication on the merits of the exceptions.

In the 1930's William owned real estate in Springfield Township, Erie County, Pa. A mortgage on the property was executed by William, as obligor, on February 1, 1923, in favor of James Miles Hall, trustee, as obligee. The mortgage and judgment bond accompanying the mortgage were assigned by James Miles Hall, trustee, to Security-Peoples Trust Co., Erie, Pa. Security-Peoples Trust Co. assigned the mortgage and accompanying bond to Elmer L. Evans, who later assigned them to decedent by instrument dated November 16, 1937.

A judgment was entered at No. 532, February term 1946, in the Court of Common Pleas against William to the use of decedent in the amount of $7,500 plus interest from April 1, 1932. The confession of judgment was based upon the judgment bond accompanying the mortgage.

The lien of the judgment at No. 532 was kept valid and alive by filing *Amicable Scire Facias Sur Judgments*, at No. 372, February term 1951, and No. 268, February term 1956, in the Court of Common Pleas.

Decedent executed upon the mortgage on the Springfield Township property, and the sheriff sold the property on May 10, 1946. Decedent bought the property at the sheriff's sale by paying costs and taxes in the amount of $4,775.63. Decedent received a deed dated May 13, 1946, from the sheriff for the purchase.

Thereafter, decedent executed a declaration of trust dated June 1, 1946, in favor of William and Lillian with respect to the Springfield Township property.

Another judgment was entered against William by decedent on November 25, 1944, in the Court of Common Pleas at No. 80, November term 1944, in the amount of $9,359.43 plus interest. This judgment was based upon a judgment note dated November 1, 1944, executed by William in favor of decedent.

The lien of the judgment at No. 80 was kept valid and alive by filing *Amicable Scire Facias Sur Judgments* at No. 371, February term 1951, and No. 269, February term 1956, in the Court of Common Pleas.

The *Amicable Scire Facias Sur Judgments* filed at Nos. 268 and 269, February term 1956, had been signed by William on December 19, 1955, agreeing to the entry of judgments against him.

There are no receipts evidencing payment by William to decedent on judgments Nos. 268 and 269 during the period from the entry of the judgments in the February term 1956, to the date of decedent's death on March 1, 1957.

The amount of business transacted between William and decedent after 1930 exceeded $400,000. The two brothers generally kept records of the transactions between themselves.

In addition to the two judgments here involved, decedent had held other judgments against William. Decedent had executed upon these judgments in the 1940's. Execution upon those judgments removed from William all property owned by him in his individual name and put it into decedent's name.

Decedent filed Erie County, Pa., personal property tax returns as of January 1 for the years 1950 through 1957.

On June 11, 1958, there were filed in the Prothonotary's Office, Erie County, Pa., documents purporting to be assignments to Lillian of the judgments represented by the *Amicable Scire Facias Sur Judgments* recorded at Nos. 268 and 269, February term 1956. Each document dated June 5, 1956, bears the purported signature of decedent and the names of two witnesses, Victor Gorr and Norman Smith.

The *Amicable Scire Facias Sur Judgments* filed in the Court of Common Pleas at Nos. 268 and 269, February term 1956, each bear the true and correct signature of decedent.

On August 1, 1956, a lease was executed between decedent, as lessor, and Benjamin E. and Mary Morgan, as lessees. The lease bears the true and correct signatures of decedent, who signed it each month from August 1956 through January 1957 acknowledging receipt of the $25 monthly rent.

Roy H. Brubaker executed two judgment notes payable to decedent dated February 3, 1953, and June 9, 1955, and one judgment note

payable to Briggs-Hagenlocher, Inc., dated December 17, 1956. The back of each note provides for its assignment and contains decedent's true and correct signature.

The documents filed on June 11, 1958, which purported to assign judgments Nos. 268 and 269 to Lillian, do not bear the true and correct signature of decedent. His signatures thereon were forged.

In his notice of deficiency respondent gave the following explanation of adjustment:

It is determined that there is includible in the taxable estate the value of the Judgments held by the decedent against William * * * in the amount of $35,475.04 determined as follows:

| | |
|---|---:|
| Judgment No. 268: | |
|     Principal | $7,500.00 |
|     Interest | 11,187.75 |
| Judgment No. 269: | |
|     Principal | 9,359.43 |
|     Interest | 7,427.86 |
|     Total value | 35,475.04 |

At the date of his death decedent held valid enforceable judgments of record against William in the total amount of $35,475.04.

### OPINION

It is well settled that a cause of action, here a debt, is merged into a judgment. *Tourville* v. *Wabash R. Co.*, 179 U.S. 322 (1900); *United States v. Leffler*, 11 Pet. 86, 100, 101 (1837). Hence the only question we need to consider is whether the judgments of record held by decedent were valid and enforceable at his death and, consequently, includable in his gross estate.[1] Although no brief was filed on behalf of petitioner, it appears from the opening statement of his counsel that he contends either that the judgments had been assigned or satisfied as of decedent's death or, alternatively, that the Orphans' Court decided that the judgments were invalid or unenforceable by decedent.

Petitioner introduced no convincing evidence in the form of receipts or credible testimony showing satisfaction of the judgments. The only testimony with respect to the satisfaction of the judgments was that of William, and it was self-contradictory and inconsistent with the exhibits purporting to show assignment of the judgments to Lillian, William's wife. We note that when Spaeder contacted William on Edith's behalf, William first asserted that the judgments had

---

[1] SEC. 2033 [I.R.C. 1954]. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein of the decedent at the time of his death.

been paid, but in a subsequent conversation apologized for claiming to have paid the judgments and stated that they had been assigned to Lillian. Cf. *T. F. Cross, Executor*, 5 B.T.A. 621 (1926).

The contention that the judgments were assigned to Lillian must also fail. Although petitioner alleges that the signatures on the assignment forms were decedent's, they were not. As respondent's expert witness testified, and as we have found from a careful examination of the stipulated actual signatures of decedent and the signatures on the assignment forms, there are clear discrepancies between the two groups of signatures. The assignment forms do not bear the true and correct signatures of decedent. Since there is no other evidence to substantiate the claimed assignment, it follows that no valid assignment was made.

Thus, the two judgments of record are includable in the decedent's gross estate unless the Orphans' Court decided otherwise. So long as the proceeding is not collusive, *Blair* v. *Commissioner*, 300 U.S. 5 (1937), an adjudication on the merits by the Orphans' Court that the decedent had no interest in the judgments at his death would be binding on this Court for estate tax purposes. *Freuler* v. *Helvering*, 291 U.S. 35 (1934); *Estate of A. Bluestein*, 15 T.C. 770 (1950). The words of the Court of Appeals in *Gallagher* v. *Smith*, 223 F. 2d 218, 222–223 (C.A. 3, 1955), are particularly appropriate:

The third type of federal tax case in which a state decision is sought to be given effect is that in which a state court has determined the rights of the parties to income or other property involved in the tax litigation and the tax is imposed by the Internal Revenue Code solely upon the person entitled to the income or other property under the state law, the federal law having imposed no qualification upon or criterion for the taxability thereof. In other words Congress has made the operation of the tax law in such a case wholly dependent upon state law. In a case of this sort the state judgment must be given conclusive effect in determining federal tax liability. * * * This is because the right to the income or other property sought to be taxed is created solely by state law. Since by hypothesis no federal qualification or criterion has been imposed and the tax is levied solely upon those in whom the state law has vested the title, the question can only be one of state law. An adjudication of such a question of title by a court of the state must accordingly be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an independent examination and application of state law. For if it reaches a different conclusion from the state court as to what the parties' rights should be under the state law its decision will not change those rights which will necessarily remain what the state court has declared them to be. What we have said is, of course, *subject to the qualification that a state court has adjudicated the rights of all parties* claiming interests in the income or property in question and that it had jurisdiction to do so. * * * [Emphasis supplied.]

The Orphans' Court did not render a decision on the merits as to decedent's interest in the two judgments. Certainly there was no adjudication of the merits merely because the Orphans' Court entered the decree acknowledging William's first and final account. That decree was based on William's schedule of distribution from which was omitted the two judgments. It was only upon Edith's bringing the exceptions that the Orphans' Court became cognizant of the two judgments. And, before there was any hearing on the exceptions, the Orphans' Court accepted a stipulation and family agreement from the parties, so that there was no decision on the merits of the exceptions. Consequently, in the absence of such adjudication, the order of the Orphans' Court is not binding on this Court. *Earle* v. *Commissioner*, 157 F. 2d 501 (C.A. 6, 1946), affirming 5 T.C. 991 (1945), certiorari denied 330 U.S. 822. See also *Estate of Ralph Rainger*, 12 T.C. 483 (1949), affirmed per curiam 183 F. 2d 587 (C.A. 9, 1950), certiorari denied 341 U.S. 904.

The absence of a decision on the merits distinguishes *Gallagher* v. *Smith*, *supra*, and *Babcock's Estate* v. *Commissioner*, 234 F. 2d 837 (C.A. 3, 1956), reversing 23 T.C. 888 (1955), as well as *Beecher* v. *United States*, 280 F. 2d 202 (C.A. 3, 1960). And, contrary to *Darlington's Estate* v. *Commissioner*, 302 F. 2d 693 (C.A. 3, 1962), reversing 36 T.C. 599 (1961), there was not "a state court's adjudication * * * final in its effect" which all parties would "have a bad time trying to avoid." *Helvering* v. *Bullard*, 303 U.S. 297 (1938), is likewise distinguishable. There, as the Supreme Court pointed out, the State court had "adjudicated the rights of the parties," whereas in the present case the court did no more than accept a stipulation and family agreement without deciding what the decedent's interest was.

Inasmuch as there is no State court decision binding us, we are free to reach our own conclusion. After careful consideration of all relevant factors, we have found that the judgments were valid and enforceable in decedent's hands at the time of his death, and that respondent is justified in including the value of the judgments in decedent's gross estate. See *Estate of Burd Blair Edwards Dickson*, 13 T.C. 318 (1949) ; *Estate of Theodore O. Hamlin*, 9 T.C. 676 (1947).

*Decision will be entered for the respondent.*